Amy J. Oliver (8785)
olivera@sec.gov
Daniel J. Wadley (10358)
wadleyd@sec.gov
Cheryl M. Mori (8887)
moric@sec.gov
Paul N. Feindt (8769)
feindtp@sec.gov
Attorneys for Plaintiff
Securities and Exchange Commission
351 South West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel. 801-524-5796
Fax: 801-524-5262

FILED
U.S. DISTRICT COURT

2015 FEB 11 A 9:10

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>ROGER S. BLISS, an individual and ROGER S. BLISS d/b/a ROGER BLISS AND ASSOCIATES EQUITIES, LLC a Utah Limited Liability Company, ROGER BLISS AND ASSOCIATES CLUB LLC, and BLISS CLUB LLC,<br><br>DEFENDANTS. | **COMPLAINT**<br><br>Case: 2:15cv00098<br>Assigned To : Nuffer, David<br>Assign. Date : 2/11/2015<br>Description: Securities and Exchange Commission v. Bliss et al |

Plaintiff, Securities and Exchange Commission (the "Commission"), for its Complaint against defendants Roger S. Bliss ("Bliss") and Roger S. Bliss d/b/a Roger Bliss and Associates Equities, LLC, Roger Bliss and Associates Club LLC, and Bliss Club LLC (collectively, "Defendants") alleges as follows:

## INTRODUCTION

1.      This matter involves a fraudulent day-trading scheme perpetrated by Roger S. Bliss. From at least 2008, Bliss has been engaging in a scheme in which he solicits investors to invest money in a purported "investment club" operated under the names of Roger Bliss and Associates Equities, LLC, Roger Bliss and Associates Club LLC, and/or Bliss Club LLC (the "Bliss Entities"), by making material misrepresentations and omissions. The misrepresentations include his past performance and expected future profitability; the use of investor funds; the amount of funds held by the investment club, including Bliss personally; and the safety of the investment.

2.      Bliss claims to have tremendous success day-trading Apple Inc. stock ("AAPL"), achieving annual returns for his investors of between 100 to 300%. Bliss tells investors he has never had a trading day in which he has lost money in the past six years. Bliss claims to be managing in excess of $300 million of which approximately $260 million is his own equity in the fund. Bliss also claims there is no risk for investors as he indemnifies them against the loss of their principal.

3.      Contrary to Bliss' representations, Bliss' trading has not been profitable. Bliss' brokerage account shows that from January 1, 2012 through January 12, 2015, Bliss incurred losses totaling approximately $3,299,689. That same trading account also showed an ending balance on December 31, 2014 of only $32,362.84. Bliss advanced his scheme by generating falsified trading records and account statements showing successful trading. Bliss also failed to use investor funds for his stated purpose of day-trading.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction by authority of Sections 20 and 22 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77t and 77v], Sections 21 and 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§ 78u and 78aa], and Sections 209 and 214 of the Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. §§ 80b-9 and 80b-14].

5. Defendants, directly and indirectly, singly and in concert, have made use of the means and instrumentalities of interstate commerce and the mails in connection with the transactions, acts and courses of business alleged herein, certain of which have occurred within the District of Utah.

6. Venue for this action is proper in the District of Utah under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214(a) of the Advisers Act [15 U.S.C § 80b-14(a)] because certain of the transactions, acts, practices, and courses of business alleged in this Complaint took place in this district and because Defendants reside in and transact business in this district.

7. Defendants, unless restrained and enjoined by this Court, will continue to engage in the transactions, acts, practices, and courses of business alleged herein and in transactions, acts, practices, and courses of business of similar purport and object.

8. Defendants' conduct took place in connection with the offer, purchase and/or sale of investment contracts issued by Bliss, which are securities.

## DEFENDANTS

9. **Roger S. Bliss ("Bliss")**. Age 56 and a resident of Bountiful, Utah. Bliss purports to run an investment club and to be responsible for day-trading the investment club's assets for profit. From approximately 2008 to the present, Bliss has been offering and selling investments to individuals and has been offering investment advice.

10. **Roger S. Bliss d/b/a Roger Bliss and Associates Equities, LLC, Roger Bliss and Associates Club LLC, and/or Bliss Club LLC (the "Bliss Entities")**. Bliss has operated under various entity names, including: **Roger Bliss and Associates Equities, LLC**, formed in Utah in February 2013, with expired registration as of May 26, 2014 for failure to file renewal; **Roger Bliss and Associates Club LLC**, an apparently fictitious entity; and **Bliss Club LLC**, an apparently fictitious entity.

## STATEMENT OF FACTS

### Background

11. Roger Bliss has been day trading Apple Inc. stock ("AAPL") since 2008.

12. Bliss claims that friends asked him to trade funds on their behalf, but Bliss declined at first. According to Bliss, he taught investment seminars and traded for his own account for about a year until he felt comfortable enough with his proficiency and results to trade with his friends' money.

13. Bliss claims that he consulted attorneys and decided to structure his program as an investment club because this would not require him to be registered as an investment adviser or broker dealer.

14. Bliss is currently soliciting investors and offering them memberships in his "investment club."

15. Bliss represents to investors and potential investors that his investment club operates as a limited liability company.

16. Bliss tells investors and potential investors that he maintains an equity position greater than 50% of the total value of the investment club's assets, which he says is a requirement of an unregistered investment club. Bliss claims his investment club has thirty to thirty-five investors and holds over $300 million in funds, of which approximately $260 million consists of Bliss' personal funds.

17. Bliss has represented to investors that he holds the investment club funds in four to sixteen accounts held at TD Ameritrade ("TDA"). Bliss states that he trades only AAPL stock, which is the largest capitalized stock in the U.S. markets.

18. Bliss claims to have an excellent trading record and that he has never had a trading day where he lost money in the past six years. Bliss represents that investors can expect to earn a 100% return on investment each year, but that returns will likely be higher because he has made 200% and 300% returns for investors for a number of years. Bliss claims that one couple invested $300,000 with him approximately six years ago which Bliss was able to grow to between $20 and $30 million through his trading activities.

19. Bliss represents to investors and potential investors that when he trades other people's money, he takes "50% of the upside" so that earnings are split. Bliss provides written agreements to investors which state that Bliss "accrues 50% of all profits generated for his management and investing skill."

20. Bliss asserts to investors and potential investors that they need only contribute money, that Bliss will combine their money with other investor monies and Bliss' personal monies into a pooled fund to make profits through day-trading AAPL stock.

21. Bliss tells investors that he will conduct all trading on behalf of the pooled fund, that he will manage all the assets of the pooled fund, and that he and the investors will share in the profits from the pooled fund.

22. According to Bliss, the remaining 50% of profits are shared by investment club members, based on their percentage of equity in the club. Even after the 50% split, Bliss represents to investors they will still earn at least a 100% return on their investment because Bliss is actually earning a 200% to 600% total annual return.

23. Bliss guarantees to investors and potential investors that he will indemnify all investment club members for any loss to principal. He has stated that he indemnifies investment club members from any loss "just because I can." Bliss provides written agreements to his investors which state that "Roger Bliss shall indemnify Club members from any losses to the initial contribution to equity."

24. Bliss tells investors and potential investors that the Commission audits his trading accounts a few times each year and that the Commission calls him twice each year as part of the Commission's anti-money laundering efforts, due to the sheer size of Bliss' accounts.

25. Bliss provides account statements to his investment club members through a website (www.millcreekequities.com or blissclubllc.com) accessible by members with a password. Bliss originally used the website, www.millcreekequities.com, which displayed the logo of ThinkOrSwim, a brokerage firm that was acquired by TDA in 2011. Bliss stopped using the site after the website host notified Bliss on December 17, 2014 that using ThinkOrSwim's logo was a trademark violation. Bliss started using the website blissclubllc.com in January 2015.

26. Bliss provided a document to at least one investor that purportedly represented an account statement for one of Bliss' TDA accounts. The document was dated January 8, 2015

and showed a balance of over $85 million in the account. The statement showed a profit for YTD 2015 (a period of 5 trading days) of over $4.9 million. Bliss provided a false account number on the purported statement.

27. Statements provided to one investor through the website, blissclubllc.com, showed that from December 18, 2014 through January 23, 2015, the investor's account balance increased in value from $550,000 to over $650,000. Another investor deposited $400,000 with Bliss on January 15, 2015 and the investor's account balance shown on the blissclubllc.com website as of January 30, 2015 was $448,244, an increase of $48,244.

28. Bliss attests to investors that the statements on the website show investment club members how much money they hold in the investment club, their deposits and withdrawals, and their earnings.

29. From December 18, 2015 to the present, Bliss has raised at least $950,000 from at least two investors. In addition, during 2014, Bliss deposited approximately $7,421,000 from his bank account to his TDA account. These deposits appear to be from investors.

30. Bliss continues to solicit investments. In January 2015, Bliss represented to TDA that he planned to add $2 to $3 million to his account.

## MATERIAL MISREPRESENTATIONS AND OMISSIONS

### Amount of Funds Controlled by Bliss

31. Bliss claims that he conducts all of his trading through TDA. He has represented that he has held up to sixteen accounts with TDA, but currently trades in only four to six accounts. In reality, Bliss conducted trading activities in only one account at TDA. The TDA account was held in the name of Roger Bliss and statements were sent to Bliss personally, at his home address.

32. Contrary to Bliss' representations, his brokerage records show that Bliss suffered substantial losses for the years 2012 through the present. Bliss' account suffered a loss of $718,982 in 2012; $1,195,111 in 2013; and $1,364,593 in 2014. From January 1, 2015 to January 15, 2015, the account lost $19,004. The total loss from 2012 to the present is $3,297,690.

33. On January 15, 2015, TDA closed Bliss' account and sent Bliss a check for $563,359, the balance of funds remaining in the account.

34. Having been notified his TDA account would be closed, Bliss opened a new personal brokerage account in his name on January 14, 2015 at TradeStation Group, Inc. with a deposit of $100,000. As of January 30, 2015, Bliss had conducted no trades and had no additional transactions in that account.

35. Bliss' representations that he holds and trades $300 million (including approximately $260 million in personal funds) in brokerage accounts are false and misleading.

### Use of Investor Funds

36. Bliss represents to investors that all monies invested will be pooled together with other investor funds and his personal funds into a brokerage account to trade AAPL stock for profit. During December 2014 and January 2015, Bliss collected at least $950,000 from investors.

37. Investors wired monies to Bliss' personal bank account at Wells Fargo Bank. Bliss represented he would transfer those investor funds to his brokerage account(s) to be used for trading, and in fact told two investors that investment monies would be transferred from Bliss' bank account to his trading account(s) within one day.

38. Bliss is not using investor funds as represented. TDA brokerage records show that from October 28, 2014 to January 6, 2015, Bliss made no deposits into his brokerage account, even though he received a cash investment of $350,000 on December 18, 2014 and told the investor he would transfer the funds to his brokerage account and begin trading with the funds the following day.

39. Likewise, Bliss collected $400,000 from another investor on January 15, 2015, the same day his TDA account was closed. Bliss has not deposited the $400,000 into another brokerage account.

40. Bliss did not deposit funds into his TDA account, as represented to investors in December 2014 and January 2015. Although Bliss made a deposit of $900,000 to his TDA account on January 6, 2015, he almost immediately withdrew $350,000 on January 8, 2015. Bliss had just $563,359 in his sole trading account at TDA on January 15, 2015, the day TDA closed the account.

41. Although Bliss opened a brokerage account at TradeStation Group, Inc. on January 14, 2015, he had executed no trades in the account as of January 30, 2015. Therefore, Bliss has not been day trading investor funds, as represented.

**Past Performance and Expected Profitability**

42. Bliss tells investors and potential investors that, although he has made bad trades, he has never had a trading day where he has suffered a loss in the past six years.

43. Bliss claims that he has made at least a 100% return each year, and has made 200% to 300% returns in several years for investment club members. Bliss claims that he actually makes double those returns through his day-trading, but the 100% to 300% returns represent the 50% split to investment club members.

44. Bliss has provided written statements to potential investors purporting to show substantial profits in the millions of dollars. Bliss told at least one investor in January 2015 that he averaged profits of about $920,000 per day, and that he was averaging profits of over $2 million per day during 2015 in his investment club.

45. In reality, Bliss suffered substantial losses. Actual trading records show that Bliss lost $3,297,690 in his sole trading account at TDA since 2012, including $19,004 in losses in 2015.

46. Bliss' representations about profits and returns, including that some investors have made $20 to $30 million in his investment club, are clearly false and misleading. Bliss' representations regarding expected profits based on past performance are also false and misleading.

### Safety of the Investment

47. Bliss claims that he indemnifies any losses to investors' principal investments. He asserts that he is able to guarantee against losses because of the substantial funds he holds personally in the investment club, approximately $260 million.

48. Bliss operates his purported business out of a large, nice home. He claims to own a vacation property in a resort area in Utah, an airplane, and expensive toys, such as a sailboat and all-terrain vehicles. He tells investors that he enjoys vacations sailing in the Caribbean.

49. Bliss also tells investors and potential investors that he established the investment club with the assistance of attorneys, which creates the appearance of legitimacy. Bliss claims to operate the investment club as a limited liability company.

50. Bliss claims that due to the size of his accounts, he is regularly audited by the Commission and has twice-yearly telephone conversations with staff at the Commission, thereby creating the appearance of compliance with laws and regulations.

51. In reality, the sole account Bliss has used to conduct his trading activities held just $563,359 on January 15, 2015, far less than what investors contributed in December 2014 and January 2015 alone. The $260 million that Bliss claims he can use to indemnify investors is non-existent.

52. The registration for the only limited liability company known to be operated by Bliss, "Roger Bliss and Associates Equities, LLC," expired in May 2014. The other entities through which Bliss has done business, "Roger Bliss and Associates Club LLC" and "Bliss Club LLC," appear to be fictitious names.

53. The Commission does not audit investment clubs that are not registered with the Commission and has not audited any Bliss entity.

### Use of Falsified Documents to Conceal the Scheme

54. Bliss appears to have a computer program that he uses to generate fictitious trading records and account statements. Bliss invites potential investors to his home office, which has five to ten computer monitors purportedly displaying stock trading activity.

55. In January 2015, Bliss provided an investor with a purported account statement for a TDA account. The statement purported to show trading activity for one day, January 8, 2015. Bliss told the investor the statement showed one of the investment club's actual trading accounts with a balance of $85,278,933, a profit for the day of $1,479,473, and a year-to-date profit of $4,959,290. As noted above, the statement did not represent actual trading by Bliss.

56. Bliss provides investors with purported account information through a secure website (www.millcreekequities.com or blissclubllc.com) accessible by password. Bliss represents that the website shows account information for each investment club member.

57. One investor's transaction history from December 18, 2014 to January 23, 2015 showed total deposits of $550,000 and a profit for that time frame of $101,360.92. Another investor's account information showed that the $400,000 he invested was deposited into the brokerage account for trading on January 16, 2015, and that he had earned over $48,000 by January 30, 2015.

58. The information Bliss provided to investors through his website and elsewhere is false. As demonstrated above, Bliss' TDA account held far less than the amount deposited by these two investors at the time Bliss' account was closed on January 15, 2015. Bliss has made no deposits into a brokerage account since that time.

59. In correspondence with the web site host for his website, Bliss represented that he uses the secure website to mentor traders to report virtual trading results as they learn, thereby indicating the information contained in the website is not actual trading data. The account statements and information provided to investors by Bliss are fabricated. Bliss misrepresents that they are actual trading records.

**Materiality of Misrepresentations**

60. Bliss' misrepresentations to investors and potential investors are material because investors would find it important to their investing decisions that Bliss does not control $300 million in assets, that he does not use funds as represented, that Bliss has suffered substantial losses, and that his claims regarding safety of the investment are false. In fact, two investors have stated they would not have invested with Bliss but for these representations.

## Scienter of Bliss

61. Bliss knew his representations were false and misleading at the time he made them because he was in possession of the true facts.

62. Bliss knows that the amount of money held in the pooled fund is far less than represented and that the pooled fund has sustained substantial losses because Bliss was in sole control of all trading and personally received brokerage statements from TDA showing the balance and losses.

63. Bliss knows that he did not use investor funds as represented because Bliss received monies in his personal bank account and was the sole person who transferred assets between his bank account and brokerage account(s).

64. Bliss knows that he used falsified documents to show investors because Bliss was the individual who created the falsified account statements and information and provided them to investors, while knowing that the information contained therein was false.

65. Bliss knows that he is not operating out of a legal limited liability company because Bliss is the registered agent of Roger Bliss and Associates Equities, LLC, which registration expired in May 2014. Bliss knows he did not form legal entities under the names Roger Bliss and Associates Club LLC, and Bliss Club LLC.

66. Bliss claims he personally talks to the Commission and participates in regular audits by the Commission. He knows this is not true because such audits and talks never occurred.

## FIRST CAUSE OF ACTION
## EMPLOYMENT OF A DEVICE, SCHEME OR ARTIFICE TO DEFRAUD
### Violation of Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)]

67. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 66 above.

68. Defendants Bliss and the Bliss Entities, by engaging in conduct described above, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, with scienter, employed devices, schemes, or artifices to defraud.

69. By reason of the foregoing, Bliss and the Bliss Entities, directly or indirectly, violated, and unless restrained and enjoined by this Court, will continue to violate Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## SECOND CAUSE OF ACTION
## FRAUD IN THE OFFER OR SALE OF SECURITIES
### Violations of Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)]

70. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 66 above.

71. Defendants Bliss and the Bliss Entities, by engaging in the conduct described above, directly and indirectly, in the offer and sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, engaged in transactions, practices, or courses of business which operate or would operate as a fraud or deceit upon the purchaser.

72. By reason of the foregoing, Bliss and the Bliss Entities, directly or indirectly, violated, and unless restrained and enjoined will continue to violate, Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2) and (3)].

## THIRD CAUSE OF ACTION
## FRAUD IN CONNECTION WITH THE PURCHASE OR SALE OF SECURITIES
**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b), and (c)]**

73. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 66 above.

74. Defendants Bliss and the Bliss Entities, by engaging in the conduct described above, directly or indirectly, by the use of means or instrumentalities of interstate commerce or use of the mails, in connection with the purchase or sale of securities, with scienter, employed devices, schemes, or artifices to defraud, or engaged in acts, practices, or courses of business that operated or would operate as a fraud and deceit upon other persons.

75. By reason of the foregoing, Bliss and the Bliss Entities violated, and unless restrained and enjoined will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5(a), (b), and (c) thereunder [17 C.F.R. § 240.10b-5(a), (b), and (c)].

## FOURTH CAUSE OF ACTION
## FRAUD IN ACTING AS INVESTMENT ADVISER
**Violation of Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. § 80b-6(1), (2), and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8]**

76. The Commission realleges and incorporates by reference the allegations contained in paragraphs 1 through 66 above.

77. Defendants Bliss and the Bliss Entities, by engaging in the conduct described above, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, while acting as investment advisers, knowingly, willfully, or recklessly: (1) employed devices, schemes or artifices to defraud clients or prospective clients; (2) engaged in transactions, practices and courses of business that operated as a fraud or deceit upon clients or prospective

clients; and (3) engaged in acts, practices and courses of business which were fraudulent, deceptive, or manipulative.

78.     From approximately 2008 to the present, Defendants' investment club consisted of "pooled investment vehicles" within the meaning of Rule 206(4)-8(b) of the Advisers Act [17 C.F.R. § 275.206(4)-8(b)].

79.     By reason of the foregoing, Defendants, and each of them, directly or indirectly violated, and unless enjoined will continue to violate, Sections 206(1), (2), and (4) of the Advisers Act [15 U.S.C. §§ 80(b)-6(1), (2), and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court:

### I.

Issue findings of fact and conclusions of law that Defendants committed the violations charged herein.

### II.

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily, and permanently enjoin Defendants and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Sections 17(a)(1), (2) and (3) of the Securities Act, Section 10(b) of the Exchange

Act and Rule 10b-5(a), (b) and (c) thereunder, and Sections 206(1), (2), and (4) of the Advisers Act and Rule 206(4)-8 thereunder.

### III.

Issue, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, orders that temporarily, preliminarily and permanently enjoin Defendants and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from transferring, changing, wasting, dissipating, converting, concealing, or otherwise disposing of, in any manner, any funds, assets, claims, or other property or assets owned or controlled by, or in the possession or custody of Defendants.

### IV.

Issue in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure orders that temporarily, preliminarily and permanently restrain and enjoin Defendants, and each of them, and their officers, agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from destroying, mutilating, concealing, transferring, altering, or otherwise disposing of, in any manner, books, records, computer programs, computer files, computer printouts, correspondence, including e-mail, whether stored electronically or in hard copy, memoranda, brochures, or any other documents of any kind that pertain in any manner to the business of Defendants.

**V.**

Enter an order directing Defendants, and each of them, to pay civil money penalties pursuant to Section 20(d) of the Securities Act, Section 21(d)(3) of the Exchange Act, and Section 209(e) of the Advisers Act.

**VI.**

Enter an order directing Defendants to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains.

**VII.**

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

Dated February 11, 2015.

Respectfully submitted,

Amy J. Oliver
Daniel J. Wadley
Cheryl M. Mori
Paul N. Feindt
Attorneys for Plaintiff
Securities and Exchange Commission