IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | **MEMORANDUM DECISION AND ORDER** |
| Plaintiff, | |
| v. | Case No. 2:15-cv-00098-RJS |
| ROGER S. BLISS, et al., | Judge Robert J. Shelby |
| Defendants. | |

The Securities and Exchange Commission brought this enforcement action against a former day trader, Defendant Roger Bliss.  The court froze Mr. Bliss's assets and appointed a Receiver to locate, take control of, and preserve the assets.  The court also stayed all ancillary litigation.  Intervenor Lakeview Custom Cabins, LLC moves to lift the stay so it can pursue a foreclosure action on property the Receiver has seized.  For the reasons stated below, the court denies Lakeview's motion.

## BACKGROUND

The Commission's enforcement action is based on allegations that Mr. Bliss violated the federal securities laws while running a so-called investment club in which he purported to use investors' funds to day trade stock.[1]  On February 11, 2015, the court froze Mr. Bliss's assets and enjoined him from day trading.[2]  In the court's Order Freezing Assets, the court concluded that the Commission had made a prima facie showing that Mr. Bliss violated the securities laws.[3]  The court then determined that "a temporary asset freeze of [Mr. Bliss's] assets is necessary to

---

[1] Dkt. 1.
[2] Dkt. 8–9.
[3] Dkt. 9.

protect assets in the custody or control of [Mr. Bliss] and to maintain the *status quo*."[4]

Lakeview acted as the general contractor for construction of a cabin Mr. Bliss built in Bear Lake County, Idaho.[5]  In May 2015, Lakeview filed an amended lien on the cabin and sued Mr. Bliss in Idaho state court, alleging that Mr. Bliss failed to pay the company for its services and materials.[6]  In June 2015, the court appointed Tammy Georgelas as the Receiver and stayed all ancillary litigation—including foreclosure actions involving receivership property—until further order of the court.[7]  Shortly after her appointment, the Receiver took control of the cabin.

The court permitted Lakeview to intervene based on its claim that it has an interest in the cabin and the court's litigation stay impairs that interest.[8]  Lakeview now moves the court to lift the stay so it can pursue its foreclosure action in Idaho state court.[9]

## DISCUSSION

Lakeview urges the court to lift the litigation stay for two reasons.  Lakeview first argues the court improperly enjoined Lakeview's foreclosure action because the Idaho state court was the first court to assume jurisdiction over the cabin.  Lakeview next argues it will lose its rights in the lien unless the stay is lifted so it can pursue its foreclosure action in Idaho state court.  Neither argument is persuasive.

## I.      Legal Standard

District courts have "broad powers and wide discretion" to fashion relief and administer federal receiverships.[10]  District courts derive this discretion "from the inherent powers of an

---

[4] *Id.*
[5] Dkt. 54.
[6] *Id.*
[7] Dkt. 39.
[8] Dkt. 95.
[9] Dkt. 96.
[10] *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1193–94 (10th Cir. 2010) (citation omitted) (internal quotation marks omitted).

equity court to fashion relief."[11]

## II.   Jurisdiction Over The Cabin

Lakeview first contends that the court improperly stayed Lakeview's foreclosure action because the Idaho state court was the first court to exercise jurisdiction over the cabin.

Both Lakeview and the Receiver agree that the Anti-Injunction Act does not prevent the court from staying ancillary state court proceedings after appointing a receiver in an enforcement action brought by the Commission.[12]  Lakeview, however, correctly points out that the court must have properly entered the injunction in the first instance.[13]  Lakeview argues that the court improperly stayed the Idaho state court foreclosure action in the first instance because the state court had already exercised jurisdiction over the cabin.

The doctrine of prior exclusive jurisdiction provides "that when a state or federal court of competent jurisdiction has obtained possession, custody, or control of particular property, that authority and power over the property may not be disturbed by any other court."[14]  As the Supreme Court explained over a century ago:

> The Federal and state courts exercise jurisdiction within the same territory,
> derived from and controlled by separate and distinct authority, and are

---

[11] *Id.* at 1194; *see also SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980) ("The federal courts have inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws."); *id.* at 1371 ("The Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest." (citations omitted)).

[12] The Anti-Injunction Act states, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283.  In *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 145–46 (1971), the Supreme Court held that the Anti-Injunction Act does not preclude federal courts from staying ancillary state court proceedings when the Federal Government or a federal agency is enforcing applicable federal law.  The Court reasoned that the purpose of the Act "was to avoid unseemly conflict between the state and the federal courts where the litigants were private persons, not to hamstring the Federal Government and its agencies in the use of federal courts to protect federal rights."  *Id.* at 146.

[13] *See id.* at 147–48 ("Whether there are parts of the state court injunction that should survive our reversal of the judgment below is a question we do not reach.  It will be open on the remand of the cause."); *see also Leiter Minerals v. United States*, 352 U.S. 220, 226 (1957) (holding that even though the Anti-Injunction Act did not apply, "[t]he question still remains whether the granting of an injunction was proper in the circumstances of this case").

[14] 13 Charles Alan Wright et al., Federal Practice and Procedure § 3631 (2015).

therefore required, upon every principle of justice and propriety, to respect the jurisdiction once acquired over property by a court of the other sovereignty.  If a court of competent jurisdiction, Federal or state, has taken possession of property, or by its procedure has obtained jurisdiction over the same, such property is withdrawn from the jurisdiction of the courts of other authority as effectually as if the property had been entirely removed to the territory of another sovereignty.[15]

This doctrine imposes a jurisdictional limitation on federal courts and is based on judicial comity considerations.[16]  It applies even when the United States or a federal agency is a party.[17] As the Second Circuit stated, "[t]he United States is not entitled to an injunction staying state court proceedings where the state court is the first court to assume jurisdiction over the subject matter of the property of an action *in rem* or *quasi in rem*."[18]

Here, Lakeview argues that the Idaho state court was the first court to assume jurisdiction over the cabin because Lakeview instituted its foreclosure action before the court appointed the Receiver and entered the litigation stay.  To be sure, Lakeview filed its foreclosure action in Idaho state court in May 2015, before the court appointed the Receiver in June 2015.  But the court froze Mr. Bliss's assets in February 2015.[19]  In freezing Mr. Bliss's assets, the court took "exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of Defendants Roger S. Bliss and Roger S. Bliss d/b/a Roger Bliss and Associates Equities, LLC, Roger Bliss and Associates Club LLC and Bliss Club LLC."[20]  The Idaho cabin is among those assets.  This is fatal to Lakeview's argument.  The court concludes that it exercised jurisdiction

---

[15] *Palmer v. Texas*, 212 U.S. 118, 125 (1909).  In *United States v. Bank of New York & Trust Co.*, 296 U.S. 463, 477 (1936), the Supreme Court again articulated the principle that the court, whether a federal or state court, "first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other."  The Court noted that the principle "is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted."  *Id.*  Instead, "[i]t applies as well where suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature, where, to give effect to its jurisdiction, the court must control the property."  *Id.*

[16] 13 Charles Alan Wright et al., Federal Practice and Procedure § 3631.

[17] *See id.*

[18] *United States v. Certified Indus.*, 361 F.2d 857, 860 (2d Cir. 1966).

[19] Dkt. 9.

[20] *Id.*

over the cabin before Lakeview commenced the Idaho state court proceeding and that the court properly stayed that foreclosure action.

## III.    Lifting The Stay

Lakeview next urges the court to lift the stay so it can protect its lien.  Lakeview contends that if the court does not provide it relief from the stay, then it will lose its rights under the lien and lose its ability to recover its state law remedies.

A court may impose a litigation stay to allow the receiver "to do the important job of marshaling and untangling . . . assets without being forced into court by every investor or claimant."[21]  But when imposing a stay, the court must allow potential litigants to petition the court for permission to sue so litigants are not denied a day in court during a lengthy stay.[22]  And when deciding whether to lift a receivership-imposed stay, the court must balance the interests of the receiver against the interests of the moving party.[23]  The court will lift the stay only if the moving party's interests outweigh those of the receiver.[24]  The Tenth Circuit has adopted a three-factor test to determine whether lifting a stay is appropriate:

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed;
>
> (2) the time in the course of the receivership at which the motion for relief from the stay is made; and
>
> (3) the merits of the moving party's underlying claim.[25]

First, maintaining the stay preserves the status quo.  Lakeview asserts that continuing the stay upsets the status quo because it impedes its ability to perfect and protect its lien in the cabin,

---

[21] *Vescor*, 599 F.3d at 1196 (quoting *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005)).
[22] *Id.* (citing *Acorn Tech. Fund*, 429 F.3d at 443).
[23] *Id.*
[24] *SEC v. Private Equity Mgmt. Grp., LLC*, No. CV 09-2901 PSG (Ex), 2010 WL 4794701, at *2 (C.D. Cal. Nov. 18, 2010) (citation omitted).
[25] *Vescor*, 599 F.3d at 1196.

giving the Commission or the Receiver a "super priority" over Lakeview's interest in the cabin. Lakeview attempts to bolster this argument by pointing to Idaho Code Section 45-510, which states that "[n]o lien . . . binds any building, mining claim, improvement or structure for a period longer than six (6) months after the claim has been filed, unless proceedings be commenced in a proper court within that time to enforce such lien . . . ."

The court agrees with the Receiver that, because Lakeview has already commenced its foreclosure action in Idaho state court, Lakeview has already either met or missed the six-month deadline.  The court likewise agrees that the stay does not give the Commission or the Receiver any priority over Lakeview's state law security interest—the stay merely preserves Lakeview's claimed interest for later resolution by the court.  Moreover, if Lakeview is in fact a secured interest holder, it may receive preferential treatment under any eventual distribution plan.[26] "[B]ut we are not yet at that stage of the proceedings."[27]  The Receiver is charged with maximizing recoveries for all defrauded investors and creditors, and "the best way to maintain the status quo is to permit [her] to carry on with [her] investigation."[28]

Second, Lakeview's motion is premature.  The timing inquiry is "case-specific."[29]  Here, the Commission filed its complaint against Mr. Bliss in February 2015.  The court enjoined Mr. Bliss from day trading and froze his assets in the same month.  The court then appointed Ms. Georgelas as Receiver and stayed all ancillary litigation in June 2015.  After the court allowed Lakeview to intervene, Lakeview filed its motion to lift the stay in late September 2015.

In total, roughly nine months have passed since the Commission filed this suit and about five months have passed since the court appointed the Receiver.  Since her appointment, Ms.

---

[26] *See id.* at 1195 (stating that "secured interest holders will generally receive preferential treatment under a receiver's final distribution plan").
[27] *Id.*
[28] *Byers*, 592 F. Supp. 2d at 537.
[29] *Vescor*, 599 F.3d at 1197.

Georgelas has diligently inventoried and marshaled the assets.  Forcing her to litigate Lakeview's claim now in Idaho state court would hinder her assigned duties.  "Very early in a receivership even the most meritorious claims might fail to justify lifting a stay given the possible disruption of the receiver's duties."[30]  As time passes, however, Lakeview's claim "may loom larger in the balance."[31]  But again, we are not yet at that stage of the proceedings.[32]

Third, even assuming Lakeview's claim has merit, that the other factors weigh in favor of maintaining the stay is dispositive.[33]  The court declines Lakeview's request to lift the litigation stay at this time.

Lakeview will have its day in court.  That day will be after the Receiver markets and liquidates the cabin, but before the Receiver makes final distributions to the estate's beneficiaries under the claims resolution procedure.  As this case moves forward, the court will afford due process to all creditors and third parties who assert claims or interests different than those asserted by defrauded investors.  All interest holders, including Lakeview, will have an opportunity to be heard before the court approves any final distributions by the Receiver.  In the meantime, the Receiver may market the cabin.

## CONCLUSION

For the reasons stated above, the court DENIES Lakeview's motion to rescind the stay and for immediate relief (Dkt. 96).

SO ORDERED this 12th day of November, 2015.

---

[30] *Id.* at 1198 (quoting *Acorn Tech. Fund*, 429 F.3d at 443–44).

[31] *Id.* (quoting *SEC v. Universal Fin.*, 760 F.2d 1034, 1039 (9th Cir. 1985)).

[32] *See id.* (concluding that the timing factor weighed in favor of the Receiver where nine months had passed from when the Commission filed its complaint to when the district court issued its order denying the motion to lift the stay).

[33] *See id.* ("Although this underlying claim 'may have merit, the other factors do not weigh in favor of lifting the stay at the present time.'" (quoting *Acorn Tech. Fund*, 429 F.3d at 450)); *see also Byers*, 592 F. Supp. 2d at 537 (declining to lift the stay even after assuming the movants' claims were strong because "the other two *Wencke* factors weigh[ed] heavily against lifting the injunction").

BY THE COURT:

ROBERT J. SHELBY
United States District Judge