Tammy B. Georgelas (9972)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT  84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
tgeorgelas@parsonsbehle.com

*Receiver for Roger S. Bliss, et al.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      PLAINTIFF,<br><br>vs.<br><br>ROGER S. BLISS, an individual and ROGER S. BLISS d/b/a ROGER BLISS AND ASSOCIATES EQUITIES, LLC, a Utah limited liability company, ROGER BLISS AND ASSOCIATES CLUB LLC, and BLISS CLUB LLC,<br><br>      DEFENDANTS. | FIRST APPLICATION FOR INTERIM COMPENSATION OF RECEIVER AND PROFESSIONALS<br><br>Case No. 2:15-cv-00098-RJS<br><br>District Judge: Robert J. Shelby |

Tammy B. Georgelas, as Receiver for Roger S. Bliss ("Mr. Bliss"), Roger S. Bliss d/b/a Roger Bliss and Associates Equities, LLC, Roger Bliss and Associates Club LLC, and Bliss Club LLC, respectfully submits this First Application for Interim Compensation of Receiver and Professionals (the "Fee Application"), seeking approval and an order by the Court for fees and expenses incurred by the Receiver, her counsel, and staff of Parsons Behle

1

& Latimer for the period of June 1, 2015 through February 29, 2016 (the "Application Period"). Pursuant to the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Billing Instructions"), the Receiver has already submitted this Fee Application to the Securities and Exchange Commission (the "SEC"), along with all supporting invoices. The SEC reviewed the same, provided comments, and indicated it had no objection to the Fee Application after incorporation of the comments. The Receiver has made appropriate changes and now requests that she be authorized to pay all approved fees and costs from the unencumbered funds in the Receivership Estate's bank account. In support of the Fee Application, the Receiver states as follows:

## I.   INTRODUCTION

1. On June 10, 2015, the Court entered an order appointing Tammy B. Georgelas as the Receiver for Roger S. Bliss, Roger S. Bliss d/b/a Roger Bliss and Associates Equities, LLC, Roger Bliss and Associates Club LLC, and Bliss Club LLC (collectively, the "Defendants"). *See* Order Appointing Receiver and Staying Litigation (the "Order Appointing Receiver") [Docket No. 39].

2. The Court found that the appointment of a receiver was necessary and appropriate in this action for the purposes of marshaling and preserving all assets of the Receivership Defendants as well as the assets of any other entities or individuals that: (a) are attributable to funds derived from investor or clients of the Defendants; (b) are held in constructive trust for the Defendants; (c) were fraudulently transferred by the Defendants;

and/or (d) may otherwise be includable as assets of the estates of the Defendants (collectively, the "Recoverable Assets). *Id.* at 1.

3. On July 6, 2015 the Court entered an order approving of the employment of the Receiver's attorneys, which was effective as of the date of the Receiver's appointment. *See* Order Authorizing Engagement of Attorneys [Docket No. 48.]

4. In accordance with the Order Appointing Receiver, the Receiver has engaged and employed persons in her discretion to assist her in carrying out her duties and responsibilities, including but not limited to attorneys, auctioneers, appraisers, real estate agents, construction experts, and most recently, accountants (the "Receivership Team"). *See* Order Granting Motion to Employ Accountants [Docket No. 122].

5. Prior to her appointment, the Receiver met with the Securities and Exchange Commission (the "SEC") to discuss this matter and the scope of work anticipated. Sensitive to the main purposes of a receivership, which are to wind down the estate and return the largest amount of funds to victims, the Receiver agreed to perform work at a discounted rate up to a total expense of $250,000. Should she need to incur additional fees and expenses thereafter, the Receiver agreed that such work would be performed at a reduced rate of 50%, not to exceed an additional $125,000. The Receiver agreed that any work performed beyond the $375,000 would be at no cost to the estate. Thus, the cost to the estate for the Receiver and her counsel would be no more than $375,000.

6. To help meet this arrangement, the Receiver agreed to reduce her rate to $270/hour and Parsons Behle & Latimer agreed to discount its customary rates as follows: (a) a

3

blended rate for paralegals and associates of $210 per hour; and (b) hourly rates of between $240 and $380 for shareholders.

7.      Below is a table providing the Fee Schedule of the Receiver's professionals and paraprofessionals who have worked on this matter to date. As can be seen in the table, the Receiver has utilized legal assistants at a lower rate as often as possible.

| Timekeeper | Rate |
| --- | --- |
| Amy A. Lombardo | $ 210.00 |
| Brian M. Rothschild | $ 210.00 |
| Bruce H. White | $ 380.00 |
| Chermaine Gord | $ 115.00 |
| Elizabeth A. Lorenzo | $ 210.00 |
| Emily D. Holt | $ 225.00 |
| J. Thomas Beckett | $ 380.00 |
| Jacqueline H. Pope | $ 160.00 |
| Jason S. Nichols | $ 295.00 |
| Jeffrey C. Corey | $ 249.40 |
| Marianne J. Dabel | $ 160.00 |
| Mark W. Dykes | $ 380.00 |
| Matthew D. Cook | $ 260.00 |
| Melinda L. Peiffer | $ 115.00 |
| Samuel T. Williams | $ 210.00 |
| Tammy B. Georgelas | $ 270.00 |

8.      When the Receiver first met with the SEC, the information available at the time indicated that the Defendants had losses of approximately $3,300,000, owed to about 40 investors, and that Mr. Bliss would cooperate in the administration of the Receivership Estate.

9.      Since the appointment of the Receiver, and after a thorough investigation by the SEC and the Receivership Team, it is now known that losses actually exceed $21,000,000,

affecting over 150 investors, and that Mr. Bliss was not cooperative in, and indeed actively thwarted, the administration of the estate.[1]

10. Although the complexity and sheer size of this case has changed dramatically in the past year, the Receiver and her team remain committed to their agreement with the SEC and the Court to cap their fees at $375,000.

11. The Receiver notes that the victims in this case have also benefitted because the SEC hired Lone Peak Valuation Group ("Lone Peak") directly at the inception of the matter to perform the forensic accounting work. The SEC, not the estate, bore this cost of $80,000. The Receiver has now engaged Lone Peak to assist her with the claims administration process, and has benefitted greatly from their background knowledge. If a new firm had been engaged, the cost for it to get up to speed would have likely exceeded $20,000. And, as set forth in the Receiver's Motion to Employ Accountants, Lone Peak has also agreed to perform work in this matter at a significantly discounted rate.

12. Due to the sensitive nature of the work performed by the Receivership Team, the Receiver requested permission from the Court to submit her detailed invoices *in camera*. The Court granted her request, and entered the Order Granting Motion to File Fee Application Invoices *in camera* on May 5, 2016. [Docket No. 140.]

13. The detailed invoices comply with the requirements of the SEC Billing Instructions, and as explained above the Receiver has already submitted them to the SEC,

---

[1] As the Court is aware, Mr. Bliss was sentenced to a year in federal prison for perjury after lying to the Receiver and the Court about his assets.

which did not object to the time spent in this matter. Summaries of the services provided during the Application Period are provided below:

## II.  CASE STATUS

A.  Case Administration

1. The Court is aware of the intricacies of this case via the Receiver's status reports, notices of failure to comply with court orders, and the Court's own involvement in contempt hearings. The Receiver's reports and notices provide detailed information outlining steps she has taken in administering the estate. In the interest of saving time and expense to the estate, the Receiver refers back to those documents and provides below a summary of the work she has performed as required by the SEC Billing Instructions.

2. The Receiver has marshalled all personal property that has been acknowledged by the Defendants and related third parties. Sale of personal property has provided a net profit to the estate of approximately $445,000. The Receiver is carefully considering the costs and benefits of third party actions to return more personal property to the estate.

3. Last month, the Receiver received the necessary conveyance deed for the Bountiful Property (the last step needed to market and sell such property). Over the next few weeks, the Receiver and her agents removed the remaining personal property from the house, cleaned it, and performed necessary repairs to prepare it for sale. This is the fourth and final real property left to sell in the estate, and appraisals state the property is worth over $700,000. The lavish home was listed and marketed heavily for three weeks, resulting in a full price cash offer for $885,000. The Receiver filed an Ex Parte and Verified Motion to Allow the Receiver to Sell

the Bountiful House As Is, Where Is, Free and Clear of All Liens, Claims, and Interests on May 4, 2015. [Docket No. 138.]

4. The Court entered an Order Granting Ex Parte and Verified Motion to Allow the Receiver to Sell the Bountiful House As Is, Where Is, Free and Clear of All Liens, Claims, and Interests on May 5, 2015. [Docket No. 139.]

5. The Receiver is actively working with the Buyers and the title company to ensure a smooth and timely closing on the property.

6. Resulting net profits from sales of the three other real properties are as follows:

| **Real Property** | **Net Profit** |
|---|---|
| Bear Lake Main Cabin | $593,134.50 |
| Bear Lake Garage | $108,614.45 |
| Millcreek Property | $72,044.56 |
| **Total** | **$773,793.51** |

B. <u>Unencumbered Funds</u>

1. As of February 29, 2016, the Estate holds liquid assets of $2,084,316.88 in an operating account from which all general operating and administrative expenses of the estate are paid. Standardized Fund Accounting Reports for the Application Period are attached as <u>Exhibit A</u>.

2. The funds on deposit have been obtained through marshalling Defendants' bank accounts and selling personal and real property. Although expenses such as utility bills and appraisal fees have been paid from the account, funds have not yet been disbursed to victims.

C.     Claims Proceedings

1.     The Receiver is finishing the first phase of the case, marshalling and liquidating assets, and is proceeding with the next phase: claims proceedings.  One large hurdle in this case has been that many investors deposited money with Mr. Bliss through an entity, relative, or other personal relationship, but received money from Mr. Bliss directly under a different name.  As a result, it has been difficult to trace or otherwise connect deposits with payouts to obtain an accurate picture of which investors have a net gain and which have a net loss.  Based on information received from the Town Hall Meeting, the accountants have been able to make many connections and hone their numbers.  Our goal is to crystallize the accounting through the claims process so that the Receiver can make a disbursement to investors with net losses as soon as possible and begin the process of recapturing funds from those who obtained net gains.  The Receiver anticipates filing a proposed Distribution Plan with the Court in the next two weeks.

D.     Claims Held by the Receiver

Based upon Lone Peak's investigation and information obtained at the Town Hall meeting, the Receiver believes she may have claims against third parties totaling over $5,000,000.  This amount could change based on responses to demand letters and information gathered during the claims process.  In addition to serving formal demands, the Receiver is in the process of subpoenaing documents to further investigate claims against third parties.  The Receiver will pursue separate legal action against these third parties where appropriate, and will file any such actions by the first week in June 2016.

E. The Receivership Team's Efforts to Save Money for the Estate

The Receiver has saved significant funds for the estate by retaining agents who have assisted her in myriad ways charging only for the cost of their commissions. For example, Gary McKee was the realtor for the Bear Lake properties. He graciously agreed to accept only a 1% commission on the sale of the Garage and in return spent many nights and weekends assisting the Receiver in obtaining documentation from contractors and negotiating with Lakeview Custom Cabins. In addition, Mr. McKee assisted the Receiver with the main cabin by removing dangerous items from the garage, coordinating donation to the local food bank, and meeting with potential purchasers of vehicles and boats to show them the property.

Similarly, Rob Olson of Erkelens & Olson has spent countless hours with his team cleaning out the Bountiful House and the Millcreek House so that the personal property could be inventoried and sold. He also performed free landscaping services on the Millcreek House, hauled away a significant amount of trash from the site, and generously offered the use of his building to host the Town Hall Meeting. He even provided free drinks at the meeting.

In addition, the Receiver's assistant, Chermaine Gord, has spent over 250 hours helping with daily tasks such as monitoring the mail, paying utilities, and communicating with creditors, agents, appraisers, and investors, and valuing and selling personal property. The vast majority of Ms. Gord's work has been absorbed by the Receiver's law firm and has not been charged to the estate.

The Receiver's construction expert, Mark Woolley, assisted her in coordinating the donation of items that could not be sold from the Bountiful House to the MS Society. He helped the charity box up the last of the property and take it to their distribution center.

Most recently, real estate agent for the Bountiful Property, Bob Poole, has agreed to discount his commission by 1% and use his own funds for extraordinary marketing efforts including highlighting the home in a half page ad in Utah Business Magazine.

Finally, as mentioned above, the investors have benefitted immensely by the fact that the forensic accountants in this matter, Lone Peak Valuation, were paid directly by the SEC instead of from funds of the estate.

### III. REQUEST FOR COURT APPROVAL OF FEES AND EXPENSES

The Receiver represents that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

The Receiver respectfully requests that the Court enter an order approving the fees and costs incurred by the Receiver and her attorneys on an interim basis, and authorizing payment from the Receivership Estate. The fees incurred by the Receiver and her attorneys, categorized by task, is as follows:

| Task | Receiver | Parsons, Behle & Latimer | Total Fees |
|---|---|---|---|
| Asset Analysis and Recovery | $62,505 | $18,144 | $80,649 |
| Asset Disposition | $52,731 | $18,172.50 | $70,903.50 |
| Case Administration | $73,467 | $30,018 | $103,485 |
| Claims Administration and Objections | $14,688 | $1,855 | $16,543 |
| Ancillary Litigation | $7,371 | $18,357 | $25,728 |
| **Total Fees** | **$210,762** | **$86,546.50** | **$297,308.50** |

An itemization of the work performed by individual is set forth below. This breakdown is supported by the detailed invoices already provided to the SEC and submitted directly to the Court *in camera* as Exhibit B.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Amy A. Lombardo | 4.3 | $ 210.00 | $903.00 |
| Brian M. Rothschild | 25.4 | $ 210.00 | $5,334.00 |
| Bruce H. White | 0.5 | $ 380.00 | $190.00 |
| Chermaine Gord | 37.8 | $ 115.00 | $4,347.00 |
| Elizabeth A. Lorenzo | 0.6 | $ 210.00 | $126.00 |
| Emily D. Holt | 8.7 | $ 225.00 | $1,957.50 |
| J. Thomas Beckett | 80.4 | $ 380.00 | $30,552.00 |
| Jacqueline H. Pope | 16.5 | $ 160.00 | $2,640.00 |
| Jason S. Nichols | 5.6 | $ 295.00 | $1,652.00 |
| Jeffrey C. Corey | 9.4 | $ 249.40 | $2,344.50 |
| Marianne J. Dabel | 3.3 | $ 160.00 | $528.00 |
| Mark W. Dykes | 2.5 | $ 380.00 | $950.00 |
| Matthew D. Cook | 165.4 | $ 260.00 | $43,004.00 |
| Melinda L. Peiffer | 4.5 | $ 115.00 | $517.50 |
| Samuel T. Williams | 3.5 | $ 210.00 | $735.00 |
| Tammy B. Georgelas | 746.4 | $ 270.00 | $201,528.00 |
| Total | 1,114.8 | | $297,308.50 |

11

4817-0305-8993.v4

In addition, costs in the amount of $4,051.11 have been incurred by the Receiver and her attorneys for expenses such as filing fees, photocopies, postage, and recording fees. In accordance with the SEC Billing Instructions, documentation of all travel expenses greater than $75 are attached hereto as Exhibit C.

The total amount of fees and costs incurred by the Receiver and her attorneys during this Application Period is $301,359.61. In accordance with the agreement entered into between the Receiver and the SEC, the amount the Receiver seek approval for fees and costs in the total amount of $275,679.81, calculated as follows:

$$\$250,000 + \frac{[\$301,359.61 - \$250,000]}{2} = \$275,679.81$$

## VI.   CONCLUSION

The Receiver respectfully requests that the Court grant this First Application for Interim Compensation of Receiver and Professionals for Services Rendered June 1, 2015 through February 29, 2016 and that the Court enter an Order approving all fees and costs herein contained. A certification in compliance with the SEC Billing Instructions is attached as Exhibit D.

RESPECTFULLY SUBMITTED this 5th day of May, 2016.

PARSONS BEHLE & LATIMER

*/s/ Tammy B. Georgelas*
Tammy B. Georgelas

*Receiver for Roger S. Bliss, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May, 2016, I caused the foregoing **FIRST APPLICATION FOR INTERIM COMPENSATION OF RECEIVER AND PROFESSIONALS** to be electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the attorneys below:

SEC

- **Amy J. Oliver**
  olivera@sec.gov

- **Daniel J. Wadley**
  wadleyd@sec.gov

- **Cheryl M. Mori**
  moric@sec.gov

- **Paul N. Feindt**
  feindtp@sec.gov

RECEIVERSHIP DEFENDANTS

- **Neil A. Kaplan**
  nak@clydesnow.com

- **Jennifer A. James**
  jaj@clydesnow.com

- **D. Loren Washburn**
  dlw@clydesnow.com

/s/ Tammy B. Georgelas

13

4817-0305-8993.v4

# Index

<u>Exhibit A</u>—Standardized Fund Accounting Reports

<u>Exhibit B</u>—Detailed Invoices Previously Submitted to the Court *in camera*

<u>Exhibit C</u>—Documentation of All Travel Expenses Greater Than $75

<u>Exhibit D</u>—Certification