Tammy B. Georgelas (9972)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
tgeorgelas@parsonsbehle.com

*Receiver for Roger S. Bliss, et al.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>vs.<br><br>ROGER S. BLISS, *et al.*,<br><br>          Defendants. | **SECOND APPLICATION FOR INTERIM COMPENSATION OF RECEIVER AND PROFESSIONALS**<br><br><br>Case No. 2:15-cv-00098-RJS<br><br>Judge Robert J. Shelby |

Tammy B. Georgelas, the Court-appointed receiver (the "Receiver") for Roger S. Bliss ("Mr. Bliss"), Roger S. Bliss d/b/a Roger Bliss and Associates Equities, LLC, Roger Bliss and Associates Club LLC, and Bliss Club LLC, respectfully submits this Second Application for Interim Compensation of Receiver and Professionals (the "Second Fee Application"), seeking approval and an order by the Court for fees and expenses incurred by the Receiver, her attorneys, and her accountant Lone Peak Valuation Group ("Lone Peak") for the period of March 1, 2016 through September 30, 2016 (the "Application Period"). Pursuant to the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Billing Instructions"), the Receiver has already submitted this Fee Application to the

1

Securities and Exchange Commission (the "SEC"), along with all supporting invoices.  The SEC reviewed the same, provided comments, and indicated it had no objection to the Fee Application after incorporation of the comments.  The Receiver has made appropriate changes and now requests that she be authorized to pay all approved fees and costs from the unencumbered funds in the Receivership Estate's bank account.  In support of the Second Fee Application, the Receiver states as follows:

**INTRODUCTION**

1.     On June 10, 2015, the Court entered an order appointing Tammy B. Georgelas as the Receiver for Roger S. Bliss, Roger S. Bliss d/b/a Roger Bliss and Associates Equities, LLC, Roger Bliss and Associates Club LLC, and Bliss Club LLC (collectively, the "Receivership Defendants").  *See* Order Appointing Receiver and Staying Litigation (the "Order Appointing Receiver").  [Dkt. No. 39].

2.     The Court found that the appointment of a receiver was necessary and appropriate in this action for the purposes of marshaling and preserving all assets of the Receivership Defendants as well as the assets of any other entities or individuals that: (a) are attributable to funds derived from investor or clients of the Defendants; (b) are held in constructive trust for the Defendants; (c) were fraudulently transferred by the Defendants; and/or (d) may otherwise be includable as assets of the estates of the Defendants (collectively, the "Recoverable Assets").  *Id.* at 1.

3.     On July 6, 2015 the Court entered an order approving of the employment of the Receiver's attorneys, which was effective as of the date of the Receiver's appointment.  *See* Order Authorizing Engagement of Attorneys.  [Dkt. No. 48.]

2

4. In accordance with the Order Appointing Receiver, the Receiver has engaged and employed persons in her discretion to assist her in carrying out her duties and responsibilities, including but not limited to attorneys, auctioneers, appraisers, real estate agents, construction experts, and accountants (the "Receivership Team").

5. On March 17, 2016 the Court entered an order approving of the employment of the Receiver's accountants. *See* Order Granting Motion to Employ Accountants. [Dkt. No. 122].

6. Prior to her appointment, the Receiver met with the SEC to discuss this matter and the scope of work anticipated. Sensitive to the main purposes of a receivership, which are to wind down the estate and return the largest amount of funds to victims, the Receiver agreed to perform work at a discounted rate up to a total expense of $250,000. Should she need to incur additional fees and expenses thereafter, the Receiver agreed that such work would be performed at a reduced rate of 50%, not to exceed an additional $125,000. The Receiver agreed that any work performed beyond the $375,000 would be at no cost to the estate. Thus, the cost to the estate for the Receiver and her counsel would be no more than $375,000.

7. To help meet this arrangement, the Receiver agreed to reduce her rate to $270/hour and Parsons Behle & Latimer agreed to discount its customary rates as follows: (a) a blended rate for paralegals and associates of $210 per hour; and (b) hourly rates of between $240 and $380 for shareholders.

8. Below is a table providing the Fee Schedule of the Receiver's professionals and paraprofessionals who worked on this matter during the Application Period.

4850-6079-9803 v3

| Timekeeper | Rate |
|---|---|
| Emily D. Holt | $ 225.00 |
| J. Thomas Beckett | $ 380.00 |
| Jacqueline H. Pope | $ 165.00 |
| Jeffrey C. Corey | $ 285.00 |
| Matthew D. Cook | $ 260.00 |
| Tammy B. Georgelas | $ 270.00 |

9.     When the Receiver first met with the SEC, the information available at the time indicated that the Defendants had losses of approximately $3,300,000, owed to about 40 investors, and that Mr. Bliss would cooperate in the administration of the Receivership Estate.

10.     Since the appointment of the Receiver, and after a thorough investigation by the SEC and the Receivership Team, it is now known that losses actually exceed $21,000,000, affecting over 150 investors, and that Mr. Bliss was not cooperative in, and indeed actively thwarted, the administration of the estate.[1]

11.     Although the complexity and sheer size of this case has changed dramatically in the past year, the Receiver and her team remain committed to their agreement with the SEC and the Court to cap their fees at $375,000.

12.     On May 5, 2016 the Receiver filed the First Application for Interim Compensation of Receiver and Professionals (the "First Fee Application"), requesting fees and costs for the Receiver's Team in the amount of $275,679.81 for work performed from June 1, 2015 to February 29, 2016.  [Dkt. No. 142].

13.     On May 9, 2016 the Court approved the requested fees and costs.  *See* Order Granting Receiver's First Application for Interim Compensation of Receiver and Professionals.

---

[1]  As the Court is aware, Mr. Bliss was sentenced to a year in federal prison for perjury after lying to the Receiver and the Court about his assets.

4

[Dkt. No. 144].

14.     The Receiver paid the approved fees and costs from the Receivership Estate's bank account on May 10, 2016.

15.     The First Fee Application did not include a request for reimbursement for Lone Peak because the SEC, not the estate, bore the cost of the first $80,000 worth of work performed by the accountant.

16.     As set forth in the Receiver's Motion to Employ Accountants, Lone Peak agreed to perform work in this matter at a discounted rate of 17%.  The fee schedule for Lone Peak's employees is set forth below.

| Timekeeper | Rate |
|---|---|
| Jeffrey Pickett | $  220.00 |
| Brooke Karrington | $  150.00 |
| Roger Smith | $  220.00 |
| Max Mucha | $  120.00 |
| Melanie Quintana | $  120.00 |
| Tia Donohoe | $  120.00 |
| Krystina McLain | $  120.00 |
| Will Boesen | $  120.00 |
| Ansu Lee | $  120.00 |

17.     Due to the sensitive nature of the work performed by the Receivership Team, the Receiver requested permission from the Court to submit their detailed invoices *in camera*.  The Court granted her request, and entered the Order Granting Motion to File All Future Fee Application Invoices in camera.  [Dkt. No. 174.]

18.     The detailed invoices comply with the requirements of the SEC Billing Instructions, and as explained above the Receiver has already submitted them to the SEC, which did not object to the time spent in this matter.  Summaries of the services provided during the

5

Application Period are provided below.

## CASE STATUS

A.      Unencumbered Funds

1.      The Estate currently holds liquid assets of $2,610,892.25 from which all general operating and administrative expenses of the estate are paid (the "General Operating Account"). Standardized Fund Accounting Reports for the Application Period are attached as Exhibit A.

2.      The funds on deposit have been obtained through marshalling Defendants' bank accounts, selling personal and real property, and negotiating the return of funds from Net Winners.

3.      Although administrative expenses such as utility bills, appraisal fees, and attorneys' fees have been paid from the account, funds have not yet been disbursed to victims. As discussed below, the Court recently approved the Plan for Claims Administration, Loss Allocation, and Distribution (the "Plan") and set the Claims Bar date for November 14, 2016. The Receiver will make the initial and subsequent distributions to victims in accordance with the Plan.

B.      Case Administration

1.      The Court is aware of the intricacies of this case via the Receiver's status reports, notices of failure to comply with court orders, and the Court's own involvement in contempt hearings.  The Receiver's reports and notices provide detailed information outlining steps she has taken in administering the estate.  In the interest of saving time and expense to the estate, the Receiver refers back to those documents and provides below a summary of the work she has performed as required by the SEC Billing Instructions.  *See* Notice of Apparent Failure of Roger

S. Bliss to Comply With Court Order [Dkt. No. 57], Notice of Supplemental Notice of Apparent Failure of Roger S. Bliss to Comply with Court Order [Dkt. No 82], Preliminary Liquidation Plan and Status Report [Dkt. 90]; Quarterly Status Report [Dkt. 120], Third Quarterly Status Report [Dkt. No. 147], and Fourth Quarterly Status Report [Dkt. No. 172].

C.     Assets and Disposition Thereof

1.     Soon after her appointment, the Receiver seized approximately $795,000 from Mr. Bliss's personal bank account, which he had used to run his investment scheme.  Those funds were deposited into the General Operating Account.

2.     The Receiver has now marshalled and sold all personal property that has been acknowledged by the Receivership Defendants and related third parties.[2]  Sale of personal property has provided a net profit to the estate of approximately $475,000.

3.     The Receiver has also marshalled and sold all real property of the estate. Resulting net profits from sales of the four properties are as follows:

| Real Property | Net Profit |
|---|---|
| Bear Lake Main Cabin | $593,134.50 |
| Bear Lake Garage | $108,614.45 |
| Millcreek Property | $72,044.56 |
| Bountiful House | $608,521.98 |
| **Total** | **$1,382,315.49** |

D.     Liquidated and Unliquidated Claims

1.     After carefully considering the costs and benefits of third party actions, the Receiver filed lawsuits against 43 Net Winners, including insiders, in June 2016 to return funds

---

[2] With the exception of *de minimus* electronics such as computers and storage devices that may be useful during the Claims Resolution Procedure.

that could total several million dollars to the Receivership Estate.  Since that time, she has resolved 11 of the lawsuits, resulting in payments to the Receivership Estate totaling $312,445.18.[3]

2.      The Receiver is actively working with over a dozen additional Net Winners to resolve the Receivership Estate's claims against them, and anticipates that active litigation will not be necessary to obtain reasonable payments from the Net Winners in those lawsuits.

3.      Eight Net Winners have obtained legal counsel to represent them.  The Receiver's Team is completing a Ponzi Analysis that the Receiver believes will assist in resolution of several of the lawsuits and additional payments to the Receivership Estate.  The parties have agreed to toll discovery pending receipt of the analysis and discussions thereafter.

4.      The Receiver is also negotiating with the Church of Jesus Christ of Latter Day Saints to return all tithing donated by Roger Bliss during the time period in which he ran his investment scheme, totaling $178,000.  She is hopeful that she will be able to obtain a complete return of the funds without the need for litigation.

E.      Summary of Claims Proceedings

1.      On October 7, 2016, the Court approved the Receiver's Plan for Claims Administration, Loss Allocation, and Distribution and Set the Claims Bar Date for November 14, 2016.  [Dkt. No. 170].

2.      The following week, in accordance with the Plan, the Receiver mailed official Claim Forms to approximately 140 investors for whom she has valid postal addresses.  These

---

[3] The Receiver has possession of a certified check in the amount of $91,800 that she has not deposited yet pending final signatures on a settlement agreement with two related investors.

forms contained the Receiver's opinion about the Invested Amount and the Recovered Amount for each Investor's Claim.

3.      The Receiver also provided notice to unknown claimants regarding the approval of the Plan and the Claims Bar Date in Intermountain Commercial Record and Salt Lake Times, a publication of general circulation in Salt Lake County, Utah; the Davis County Clipper, a publication of general circulation in Davis County, Utah; and The News-Examiner, a publication of general circulation in Bear Lake County, Idaho.

4.      All Claim Forms must be returned to Lone Peak no later than November 14, 2016. Any Investor who has not timely submitted a Claim Form prior to the Bar Date may be forever barred from asserting a Claim against the Receivership Estate.

5.      The Claims Resolution Procedure is set forth in detail in the Plan.

6.      The Court has reserved February 8, 2017 and February 9, 2017 to conduct these hearings and make a final disposition of the disputed claims.

F.      The Receivership Team's Continued Efforts to Save Money for the Estate

The Receiver negotiated a reduction in commission to the broker for the sale of the Bountiful House from 6% to 4% of the sales price, resulting in a savings to the estate of $13,596. In addition, the Receiver negotiated the closing of the sale to take place prior to expiration of insurance on the house, saving the estate approximately $2,500 by avoiding the need to renew costly insurance on the vacant property.

The Receiver's assistant, Chermaine Gord, continues to invest significant time helping with daily tasks such as monitoring the mail, paying utilities, and communicating with creditors,

agents, appraisers, and investors.  Ms. Gord's work during this Application Period, totaling over 100 hours, has been absorbed by the Receiver's law firm and has not been charged to the estate.

## REQUEST FOR COURT APPROVAL OF FEES AND EXPENSES

A.      The Receiver and Her Attorneys

The Receiver represents that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

The Receiver respectfully requests that the Court enter an order approving the fees and costs incurred by the Receiver and her attorneys on an interim basis, and authorizing payment from the Receivership Estate.  The fees incurred by the Receiver and her attorneys, categorized by task, are as follows:

| Task | Receiver | Parsons, Behle & Latimer | Total Hours |
|---|---|---|---|
| | | | |
| Asset Analysis and Recovery | 52.4 | 19.5 | |
| Asset Disposition | 80.1 | 12.0 | |
| Case Administration | 96.0 | 12.9 | |
| Claims Administration and Objections | 157.9 | 82.8 | |
| Ancillary Litigation | 102.8 | 22.5 | |
| | | | |
| **Total Hours** | 489.2 | 149.7 | 638.9 |
| **Total Fees** | $132,084.00 | $45,718.00 | $177,802.00 |

An itemization of the work performed by individual is set forth below.  This breakdown is supported by the detailed invoices already provided to the SEC and submitted directly to the Court *in camera* as <u>Exhibit B.</u>

| Timekeeper | Hours | Rate | Total |
|---|---:|---:|---:|
| Emily D. Holt | 9.10 | $ 225.00 | $2,047.50 |
| J. Thomas Beckett | 59.60 | $ 380.00 | $22,648.00 |
| Jacqueline H. Pope | 1.50 | $ 165.00 | $247.50 |
| Jeffrey C. Corey | 4.20 | $ 285.00 | $1,197.00 |
| Matthew D. Cook | 75.3 | $ 260.00 | $19,578.00 |
| Tammy B. Georgelas | 489.2 | $ 270.00 | $132,084.00 |
| Total | 636.8 | | $177,802.00 |

In addition, costs in the amount of $5,953.22 have been incurred by the Receiver and her attorneys for expenses such as filing fees, photocopies, postage, and recording fees.

The total amount of fees and costs incurred by the Receiver and her attorneys during this Application Period is $183,755.22.  In accordance with the agreement entered into between the Receiver and the SEC, the Receiver seeks approval for fees and costs in the total amount of $94,854.22, calculated as follows:

$$\frac{\$177,802.00}{2} + \$5,953.22 \quad = \$94,854.22$$

B.  <u>The Receiver's Accountant—Lone Peak Valuation Group</u>

The Receiver further respectfully requests that the Court enter an order approving the fees and costs incurred by Lone Peak on an interim basis, and authorizing payment from the Receivership Estate.  An itemization of the work performed by individual is set forth below. This breakdown is supported by the detailed invoices already provided to the SEC and submitted directly to the Court *in camera* as <u>Exhibit C</u>.

11

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Jeffrey Pickett | 62.9 | $ 220.00 | $13,838.00 |
| Brooke Karrington | 69.9 | $ 150.00 | $10,485.00 |
| Roger Smith | 1.3 | $ 220.00 | $286.00 |
| Max Mucha | 17.2 | $ 120.00 | $2,064.00 |
| Melanie Quintana | 44.75 | $ 120.00 | $5,370.00 |
| Tia Donohoe | 4.4 | $ 120.00 | $528.00 |
| Krystina McLain | 3 | $ 120.00 | $360.00 |
| Will Boesen | .4 | $ 120.00 | $48.00 |
| Ansu Lee | .6 | $ 120.00 | $72.00 |
| Total | | | $33,051.00 |

## **CONCLUSION**

The Receiver respectfully requests that the Court grant this Second Application for Interim Compensation of Receiver and Professionals for Services Rendered March 1, 2016 through September 30, 2016 and that the Court enter an Order approving all fees and costs herein contained.  A certification in compliance with the SEC Billing Instructions is attached as Exhibit D.

RESPECTFULLY SUBMITTED this 27th day of October, 2016.

PARSONS BEHLE & LATIMER


*/s/ Tammy B. Georgelas*
Tammy B. Georgelas

*Receiver for Roger S. Bliss, et al.*

12

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of October, 2016, I caused the foregoing **SECOND APPLICATION FOR INTERIM COMPENSATION OF RECEIVER AND PROFESSIONALS** to be electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the attorneys below:

- Jennifer A. James     jaj@clydesnow.com, mcarter@clydesnow.com

- Neil A. Kaplan     nak@clydesnow.com, mcarter@clydesnow.com

- J. Thomas Beckett     ecf@parsonsbehle.com

- Paul N. Feindt     feindtp@sec.gov

- Cheryl M. Mori     moric@sec.gov

- Amy J. Oliver     olivera@sec.gov, #slro-docket@sec.gov

- D. Loren Washburn     loren@washburnlawgroup.com, mhernandez@smithcorrell.com

- Daniel J. Wadley     wadleyd@sec.gov, #SLRO-Docket@sec.gov

- Matthew D. Cook     ecf@parsonsbehle.com, mcook@parsonsbehle.com

- Platte Seth Nielson     pnielson@klmrlaw.com


*/s/ Tammy B. Georgelas*

## Index

Exhibit A—Standardized Fund Accounting Reports

Exhibit B—Detailed Invoices for Parsons, Behle & Latimer Submitted to the Court *in camera*

Exhibit C— Detailed Invoices for Lone Peak Valuation Group Submitted to the Court *in camera*

Exhibit D—Certification

4850-6079-9803 v3

<u>Exhibit A</u>

Standardized Fund Accounting Reports

**ZIONS BANK RECEIVER ACCOUNTS FOR THE ESTATE OF ROGER S. BLISS**
**Cash Receipts and Disbursements**
**For the Period January 1, 2016 to March 31, 2016**

| | January 1, 2016 through March 31, 2016 | Receivership Cumulative |
|---|---|---|
| **Beginning Balance:** | $ 1,305,381.05 | |
| | | |
| **Cash Receipts** | | |
| Business Income | - | - |
| Cash and Securities | - | 898,934.42 |
| Interest/Dividend Income | - | - |
| Business Asset Liquidation | - | - |
| Personal Asset Liquidation | 781,052.51 | 1,233,537.11 |
| Third-Party Litigation Income | - | - |
| Net Winner Settlements | - | - |
| Miscellaneous - Other | - | 77.08 |
| **Total Cash Receipts** | **781,052.51** | **2,132,548.61** |
| | | |
| **Cash Disbursements** | | |
| Disbursements to Investors | | |
| Disbursements for Receivership Operations | | |
| *Disbursements to Receiver or Other Professionals* | | |
| *Business Asset Expenses* | | 37.55 |
| *Personal Asset Expenses* | 12,464.50 | 58,542.00 |
| *Investment Expenses* | | |
| *Third-Party Litigation Expenses* | | |
| 1.  Attorney Fees | | |
| 2.  Litigation Expenses | | |
| *Tax Administrator Fees and Bonds* | | |
| *Federal and State Tax Payments* | | |
| Disbursements for Distribution Expenses Paid by the Fund: | | |
| *Distribution Plan Development Expenses:* | | |
| 1.  Fees: | | |
| Fund Administrator | | |
| Independent Distribution Consultant (IDC) | | |
| Distribution Agent | | |
| Consultants | | |
| Legal Advisors | | |
| Tax Advisors | | |
| 2.  Administration Expenses: | | |
| 3.  Miscellaneous | | |
| *Distribution Plan Implementation Expenses:* | | |
| 1.  Fees: | | |
| Fund Administrator | | |
| IDC | | |
| Distribution Agent | | |
| Consultants | | |
| Legal Advisors | | |
| Tax Advisors | | |
| 2.  Administration Expenses | | |
| 3.  Investor Identification: | | |
| Notice/Publishing Approved Plan | | |
| Claimant Identification | | |
| Claims Processing | | |
| Web Site Maintenance/Call Center | | |
| 4.  Fund Administrator Bond | | |
| 5.  Miscellaneous | | |
| 6.  Federal Account for Investor Restitution (FAIR) Reporting | | |
|      Expenses | | |
| Disbursements to Court/Other: | | |
| *Investment Expenses/Court Registry Investment System* | | |
| *(CRIS) fees* | | |
| *Federal Tax Payments* | | |
| **Total Disbursements** | 12,464.50 | 58,579.55 |
| **Ending Cash Balance** | 2,073,969.06 | 2,073,969.06 |

| | | |
|---|---|---|
| **Ending Balance of Fund - Net Assets:** | | |
| *Bank Statement Balance* | | 2,077,751.27 |
| *Unposted Deposits* | | - |
| *Uncleared Funds* | | (3,782.21) |
| **Total Ending Balance of Fund - Net Assets (Check register)** | | 2,073,969.06 |

**ZIONS BANK RECEIVER ACCOUNTS FOR THE ESTATE OF ROGER S. BLISS**
**Cash Receipts and Disbursements**
**For the Period April 1, 2016 to June 30, 2016**

| | April 1, 2016 through June 30, 2016 | Receivership Cumulative |
|---|---|---|
| **Beginning Balance:** | $  2,073,969.06 | $  - |
| | | |
| **Cash Receipts** | | |
| Business Income | - | - |
| Cash and Securities | - | 898,934.42 |
| Interest/Dividend Income | - | - |
| Business Asset Liquidation | - | - |
| Personal Asset Liquidation | 7,740.00 | 1,241,277.11 |
| Third-Party Litigation Income | - | - |
| Net Winner Settlements | 51,750.00 | 51,750.00 |
| Miscellaneous - Other | - | 77.08 |
| **Total Cash Receipts** | **59,490.00** | **2,192,038.61** |
| | | |
| **Cash Disbursements** | | |
| Disbursements to Investors | | |
| Disbursements for Receivership Operations | | |
| *Disbursements to Receiver or Other Professionals* | 275,679.81 | 275,679.81 |
| *Business Asset Expenses* | | 37.55 |
| *Personal Asset Expenses* | 13,728.47 | 72,270.47 |
| *Investment Expenses* | | |
| *Third-Party Litigation Expenses* | | |
| 1. Attorney Fees | | - |
| 2. Litigation Expenses | 14,000.00 | 14,000.00 |
| *Tax Administrator Fees and Bonds* | | |
| *Federal and State Tax Payments* | | |
| Disbursements for Distribution Expenses Paid by the Fund: | | |
| *Distribution Plan Development Expenses:* | | |
| 1. Fees: | | |
| Fund Administrator | | |
| Independent Distribution Consultant (IDC) | | |
| Distribution Agent | | |
| Consultants | | |
| Legal Advisors | | |
| Tax Advisors | | |
| 2. Administration Expenses: | | |
| 3. Miscellaneous | | |
| *Distribution Plan Implementation Expenses:* | | |
| 1. Fees: | | |
| Fund Administrator | | |
| IDC | | |
| Distribution Agent | | |
| Consultants | | |
| Legal Advisors | | |
| Tax Advisors | | |
| 2. Administration Expenses | | |
| 3. Investor Identification: | | |
| Notice/Publishing Approved Plan | | |
| Claimant Identification | | |
| Claims Processing | | |
| Web Site Maintenance/Call Center | | |
| 4. Fund Administrator Bond | | |
| 5. Miscellaneous | | |
| 6. Federal Account for Investor Restitution (FAIR) Reporting | | |
| Expenses | | |
| Disbursements to Court/Other: | | |
| *Investment Expenses/Court Registry Investment System* | | |
| *(CRIS) fees* | | |
| *Federal Tax Payments* | | |
| **Total Disbursements** | 303,408.28 | 361,987.83 |
| **Ending Cash Balance** | 1,830,050.78 | 1,830,050.78 |

| | |
|---|---|
| **Ending Balance of Fund - Net Assets:** | |
| *Bank Statement Balance* | 1,830,050.78 |
| *Unposted Deposits* | - |
| *Uncleared Funds* | - |
| **Total Ending Balance of Fund - Net Assets (Check register)** | 1,830,050.78 |

**ZIONS BANK RECEIVER ACCOUNTS FOR THE ESTATE OF ROGER S. BLISS**

Cash Receipts and Disbursements

For the Period July 1, 2016 to September 30, 2016

| | | July 1, 2016 through September 30, 2016 | Receivership Cumulative |
|---|---|---|---|
| **Beginning Balance:** | | $   1,830,050.78 | $   - |
| | | | |
| **Cash Receipts** | | | |
| Business Income | | - | - |
| Cash and Securities | | - | 898,934.42 |
| Interest/Dividend Income | | - | - |
| Business Asset Liquidation | | - | - |
| Personal Asset Liquidation | | 10,272.25 | 1,251,549.36 |
| Third-Party Litigation Income | | - | - |
| Net Winner Settlements | | 159,000.00 | 210,750.00 |
| Miscellaneous - Other | | - | 77.08 |
| **Total Cash Receipts** | | **169,272.25** | **2,361,310.86** |
| | | | |
| **Cash Disbursements** | | | |
| Disbursements to Investors | | | |
| Disbursements for Receivership Operations | | | |
| *Disbursements to Receiver or Other Professionals* | | - | 275,679.81 |
| *Business Asset Expenses* | | | 37.55 |
| *Personal Asset Expenses* | | 1,960.35 | 74,230.82 |
| *Investment Expenses* | | | - |
| *Third-Party Litigation Expenses* | | | - |
| 1. Attorney Fees | | | - |
| 2. Litigation Expenses | | - | 14,000.00 |
| *Tax Administrator Fees and Bonds* | | | |
| *Federal and State Tax Payments* | | | |
| Disbursements for Distribution Expenses Paid by the Fund: | | | |
| *Distribution Plan Development Expenses:* | | | |
| 1. Fees: | | | |
| Fund Administrator | | | |
| Independent Distribution Consultant (IDC) | | | |
| Distribution Agent | | | |
| Consultants | | | |
| Legal Advisors | | | |
| Tax Advisors | | | |
| 2. Administration Expenses: | | | |
| 3. Miscellaneous | | | |
| *Distribution Plan Implementation Expenses:* | | | |
| 1. Fees: | | | |
| Fund Administrator | | | |
| IDC | | | |
| Distribution Agent | | | |
| Consultants | | | |
| Legal Advisors | | | |
| Tax Advisors | | | |
| 2. Administration Expenses | | | |
| 3. Investor Identification: | | | |
| Notice/Publishing Approved Plan | | | |
| Claimant Identification | | | |
| Claims Processing | | | |
| Web Site Maintenance/Call Center | | | |
| 4. Fund Administrator Bond | | | |
| 5. Miscellaneous | | | |
| 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | | | |
| Disbursements to Court/Other: | | | |
| *Investment Expenses/Court Registry Investment System (CRIS) fees* | | | |
| *Federal Tax Payments* | | | |
| **Total Disbursements** | | 1,960.35 | 363,948.18 |
| **Ending Cash Balance** | | 1,997,362.68 | 1,997,362.68 |

| | | |
|---|---|---|
| **Ending Balance of Fund - Net Assets:** | | |
| *Bank Statement Balance* | | 1,997,739.68 |
| *Unposted Deposits* | | - |
| *Uncleared Funds* | | (377.00) |
| **Total Ending Balance of Fund - Net Assets (Check register)** | | 1,997,362.68 |

<u>Exhibit B</u>

Detailed Invoices for Parsons, Behle & Latimer Submitted to the Court *in camera*

<u>Exhibit C</u>

Detailed Invoices for Lone Peak Valuation Group Submitted to the Court *in camera*

<u>Exhibit D</u>

Certification

4850-6079-9803 v3

## CERTIFICATION

I, Tammy B. Georgelas, the Court-appointed Receiver in Securities and Exchange Commission v. Roger S. Bliss, et al, Civil Action No. 2:15-cv-00098-RJS, and hereby certify that:

(a)     I have read the Application;

(b)     To the best of the Applicant's knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses therein are true and accurate and comply with the Billing Instructions;

(c)     All fees contained in the Application are based on the rates listed in the Applicant's fee schedule attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

(d)     I have not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission);

(e)     In seeking reimbursement for a service which the Applicant justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Applicant requests reimbursement only for the amount billed to the Applicant by the third-party vendor and paid by the Applicant to such vendor.  If such services are performed by the Receiver, the Receiver will certify it is not making a profit on such reimbursable service; and

(f)     With respect to any charges for litigation, I have determined that the litigation is likely to produce a net economic benefit to the estate, based on reviews of: (i) the legal theories upon which the action was based, including issues of standing; (ii) the likelihood of collection on any judgment which might be obtained; and (iii) alternative methods of seeking the relief, such as the retention of counsel on a contingency basis.

Dated this _19th_ day of October, 2016.

_____
Tammy B. Georgelas, Receiver