IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>ROGER S. BLISS, et al.,<br><br>  Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING THE RECEIVER'S MOTION**<br><br>2:15-cv-98<br><br>Chief District Judge Robert J. Shelby |

   This case stems from Roger Bliss's Ponzi scheme. To protect Bliss's assets and the assets of the entities abused by him, the court appointed a receiver. Now before the court is the Receiver's Motion for an Order Amending the Order Appointing the Receiver.[1] In her Motion, the Receiver seeks an amendment, adding a finding that she has standing to pursue net-winner lawsuits under Utah's Uniform Voidable Transactions Act. Defendants in separate suits oppose her Motion. For the reasons below, the court GRANTS the Receiver's Motion.

## BACKGROUND

   Roger Bliss sustained his Ponzi scheme by creating the illusion he profitably traded Apple stock. Over the course of about six years, he raised approximately $26.3 million.[2] He lost $3.8 million investing, spent $6 million on himself, and transferred $16.3 million to investors.[3] These transfers, which Bliss mischaracterized as returns on investment, attracted new investors

---

[1] Dkt. 208.

[2] Dkt. 209, Ex. 1 at 3.

[3] *Id.*

and gulled them into investing in Bliss's scheme.[4]  Bliss, of course, did not generate returns by investing; he generated returns by transferring money from new investors to established investors.[5]  His scheme thus depended on an ever-increasing supply of capital, and when that supply dried up, Bliss's scheme was unveiled.[6]  He subsequently pleaded guilty to securities fraud and a pattern of unlawful activity.[7]

To protect Bliss's assets and the assets of entities abused by him, the court appointed a receiver.[8]  In multiple civil suits, the Receiver seeks to recoup money she alleges Bliss caused abused entities to distribute to established investors, i.e., net-winners.  For example, the Receiver sued Steve Devereux to recover funds Bliss transferred to him.[9]  Devereaux responded with a Motion challenging the Receiver's standing.[10]  After the benefit of briefing and a hearing on Devereaux's Motion, the court took two actions.  First, the court granted the Receiver's request for discovery on the standing issue.[11]  Second, the court denied Devereaux's Motion without prejudice.[12]

The Receiver served written discovery on Devereaux and subpoenaed Matthew Bliss (Roger Bliss's son) and David Hill (a defendant in an ancillary net-winner lawsuit).[13]  She

---

[4] *Id.*

[5] *Id.*

[6] *See* dkt. 1.

[7] Dkt. 6, Ex. 4.

[8] Dkt. 39.

[9] *See* 2:16-cv-508, dkt. 2.

[10] *See* 2:16-cv-508, dkt. 10.

[11] *See* 2:16-cv-508, dkt. 35.

[12] *Id.*

[13] Dkt. 209, ¶ 2.

deposed Devereaux and his accountant, Kent Chambers.[14] She interviewed and re-interviewed several victims.[15] She consulted financial advisors.[16]

Following discovery and a meet-and-confer, Devereaux did not renew his motion challenging the Receiver's standing. Devereaux instead filed his Answer, reserving the defense the Receiver lacks standing.[17] In response to consistent and sustained attacks on her standing in this case and ancillary cases,[18] the Receiver filed the current Motion for an Order Amending the Order Appointing Receiver.[19]

## LEGAL STANDARD

The parties do not specify what legal standard governs the current Motion. The court has the benefit of evidence obtained during discovery on the standing issue, so it will apply the standard for summary judgment. To withstand a motion for summary judgment, the Receiver must set forth, by affidavit or other evidence, specific facts establishing standing.[20] For the purposes of this Motion, the court accepts the Receiver's evidence as true.[21] Because standing is an indispensable part of any case,[22] Defendants may later challenge the Receiver's standing so long as they have a non-frivolous basis to do so.

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *See* 2:16-cv-508, dkt. 41.

[18] *See* 2:16-cv-508, dkt 10; 2:16-cv-558, dkt. 13; 2:16-cv-556, dkt 21.

[19] Dkt. 208.

[20] *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992) (citing Fed. R. Civ. P. 56(e)).

[21] *Id.*

[22] *Id.*

3

## ANALYSIS

Defendants attack the Receiver's assertion of standing under Utah's Uniform Voidable Transactions Act. Although the precise basis for Defendants' attack is difficult to discern, they appear to base their attack on three arguments.[23] First, Defendants argue the Receiver lacks standing because there was no unincorporated association, only Roger Bliss acting individually.[24] Second, Defendants maintain the Receiver "has no standing to act for a creditor."[25] Third, Defendants argue the Uniform Voidable Transaction Act does not apply in this case because the relevant conduct predates the Act's effective date.[26] Each of these arguments fail.

### I. Trading Club is an unincorporated association.

Federal Rule of Civil Procedure 17(b)(3) instructs courts to apply the law of the state in which it is located to determine whether an entity exists, i.e., has the capacity to sue or be sued. The court is located in Utah, so Utah Rule of Civil Procedure 17(d) applies. That Rule provides in relevant part, "When two or more persons associated in any business either as a joint-stock company, a partnership or other association, not a corporation, transact such business under a

---

[23] Defendants purported to incorporate by reference an indeterminate number of additional arguments, located somewhere within at least 7 filings that consisted of 488 pages. At oral argument, Defendants clarified they intended only for their incorporation to highlight disputed material facts. Yet the court disallows the attempted incorporation for even that limited purpose. Defendants deprived the Receiver of a meaningful opportunity to respond to whatever arguments they hoped the court would consider. Defendants also deprived the court of the benefit of the adversarial process on those arguments. More simply, Defendants' attempted incorporation runs afoul of District of Utah Local Rules of Civil Procedure 7-1(b)(2) and 7-1(c). The court thus considers only those arguments made within the text of Defendants' motions. *See* dkts. 216, 224.

[24] Dkt. 216 at 17; *see also id.* at 11-14 (using bullet points to list assorted evidence and arguments); Oral Argument at 40:27 (Oct. 23, 2018 hearing).

[25] Dkt. 216 at 3, 16.

[26] Dkt. 216 at 3, 6, 14-15.

common name, whether it comprises the names of such associates or not, they may sue or be sued by such common name." Two cases guide the interpretation and application of Rule 17(d).

The first case is *Ogden Trece v. Weber County*, in which the Utah Supreme Court confronted the issue of whether a criminal street gang was a Rule 17(d) unincorporated association.[27] The gang argued it did not exist for a lawful purpose and thus could not transact "business."[28] The unspoken presumption bolstering the gang's argument was that Rule 17(d) text referred only to *lawful* business. The Court rejected that presumption, explaining the definition of a business did not require legality.[29] Because the gang generated profits and divided those profits amongst themselves, the Court concluded the gang transacted business.[30] The gang also argued that, even if it transacted business, it did not do so under a common name.[31] Without articulating a test for determining whether an entity transacts business under a common name, the Court rejected the gang's argument because the gang had, as a group, distinguishing clothing, tattoos, hand signs, and gestures.[32]

In the second case, *Klein v. Cornelius*, the defendants argued the receiver did not have standing to bring a Utah Uniform Fraudulent Transaction Act claim because the entity in receivership (Winsome) could not bring such a claim.[33] The defendants elaborated that because Winsome was under the fraudster's control it was "a mere alter-ego" of the fraudster and thus

---

[27] 2013 UT 62, ¶30, 321 P.3d 1067.

[28] *Id.* at 1075.

[29] *Id.*

[30] *Id.* at 1075-76.

[31] *Id.* at 1076.

[32] *Id.*

[33] 786 F.3d 1310, 1316 (10th Cir. 2015).

5

without capacity to sue in its own right.[34] The Tenth Circuit rejected the defendants' "mere alter-ego argument" because a fraudster *harms* an entity by causing it to unlawfully transfer its assets to net-winners.[35] The entity, or the receiver standing in the entity's shoes, thus has standing to redress that harm under applicable fraudulent transfer acts.[36] Of course, to sue, the law must recognize the juridical existence of an entity. The Tenth Circuit therefore applied Utah Rule of Civil Procedure 17(d), explaining,

> Under Utah law, Winsome is an association of investors who pooled resources together and transacted business under the common name of Winsome Investment Trust. It had joint venture contracts with the investors on behalf of the Trust, including bank accounts and other indicia of independence and separateness. Over the course of its existence, it made payments to some investors and even had its own website.
>
> We thus agree with the district court that Winsome is an independent entity under Utah law and see no impediment for Klein to assert standing on behalf of Winsome to pursue a UFTA [Utah Fraudulent Transfer Act] claim.[37]

Defendants here insist the Tenth Circuit in *Cornelius* added an extra-textual requirement for satisfaction of Rule 17(d). This supposed requirement would require a receiver show sufficient indicia of independence and separateness of a stand-alone business entity, similar to a bona fide trust, signed trust document, or trust bank accounts, to satisfy Rule 17(d).[38] The words "indicia of independence and separateness" do appear in *Cornelius*; however, the court does not understand those words, or the passage from which they appear, to add an extra-textual

---

[34] *Id.*

[35] *Id.* (citing *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 2015)).

[36] *Id.* (citing *Scholes v. Lehmann*, 56 F.3d 750, 754 (7th Cir. 2015)).

[37] *Id.* at 1317.

[38] Oral Argument at 41:02 (Oct. 23, 2018 hearing).

6

requirement. Rather the court understands the Tenth Circuit to hold the facts in *Cornelius* were sufficient, but not necessary, to satisfy Rule 17(d).

*Ogden Trece* and *Cornelius*, although highly persuasive, do not dictate the resolution of this case because the facts in those cases differ significantly from the facts in the current case. In the absence of controlling authority, both parties invite the court to substitute legal reasoning with policy justifications.[39] The court declines these invitations because a district court does not choose what in its view is a desirable policy and then work backwards, supplying legal reasoning to effectuate that policy. On the contrary, where no state authority is controlling, a district court must endeavor to predict how the highest state court would rule.[40] Consistent with how the Utah Supreme Court interpreted Rule 17(d) in *Ogden Trece*, the court will give effect to the plain meaning of Rule 17(d)'s clear and unambiguous language.[41]

### A. Trading Club transacted business.

Rule 17(d) contemplates two factors: "(i) parties transacting business, and (ii) transacting such business under a common name."[42] Defendants dispute whether the Receiver satisfied the first factor.[43] They argue Trading Club was a "pure fiction" and thus could not have transacted

---

[39] Similarly, the court declines to consider the Receiver's policy argument, including those policy arguments borrowed from *Johnson v. Chilcott*, 599 F. Supp. 224, 227-233 (D. Colo. 1984). The court does not necessarily disagree with the reasoning of that case; however, the court does not have the same leeway to consider policy arguments because the court presently interprets statutory text. In contrast, the *Chilcott* court updated a common law test. *See id.*

[40] *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1077 (10th Cir. 2007); *see also id.* ("If there be no decision by [the state's highest] court then federal authorities must apply what they find to be the state law after giving proper regard to relevant rulings of other courts of the State.") (internal quotation marks omitted).

[41] *See Ogden Trece*, 2013 UT at ¶ 35, 321 P.3d at 1075.

[42] *Hebertson v. Willowcreek Plaza*, 923 P.2d 1389, 1392 (Utah 1996) (emphasis removed) (interpreting Utah R. Civ. P. 17(d)). After careful review of the statutory text, the court believes the Rule contemplates a third factor, namely an association. Because this third factor is not at issue here, the court does not stake out a conclusive view on this issue.

[43] Dkt. 216 at 17.

business.⁴⁴ "Business" is defined as "[a] commercial enterprise carried on for profit; a particular occupation or employment habitually engaged in for livelihood or gain."⁴⁵ The court thus asks whether two or more associates, i.e., Trading Club, conducted a for-profit enterprise.

Here, the court answers that question in the affirmative. Trading Club pooled money for the purpose of obtaining a profit.⁴⁶ Trading Club traded Apple stock and paid purported returns to certain investors.⁴⁷ Trading Club recruited and entered into agreements with new members; then Trading Club transferred the new members' investments to established members, creating the illusion of profitability.⁴⁸ And then, while under Bliss's control, Trading Club repeated the cannibalistic cycle.⁴⁹

Not a single instance of the aforementioned business conduct is fictitious. Perhaps any purported *lawful* profits were imaginary. But the transfer of purported returns to established investors was real. Evidence, including an expert forensics analysis, shows the real-world transfer of funds to investors.⁵⁰ All Defendants' "pure fiction" argument might suggest is the transfer of fraudulent returns to certain investors. But that suggestion does no damage to the Receiver's standing because when a criminal entity—be it a street gang or Ponzi entity—conducts a for-profit enterprise, Rule 17(d)'s business transaction requirement is satisfied.⁵¹ Accordingly, the court finds Trading Club transacted business.

---

⁴⁴ *Id.*

⁴⁵ *Business*, BLACK'S LAW DICTIONARY (10th ed. 2014).

⁴⁶ Dkt. 209, Ex. 1 at 3; Dkt. 209, Ex. 7 at 70:9-10.

⁴⁷ *See* Dkt. 209, Ex. 1 at 3-5.

⁴⁸ *Id.*

⁴⁹ *Id.*

⁵⁰ *Id.*

⁵¹ *See Ogden Trece*, 2013 UT at ¶ 35-38, 321 P.3d at 1075-76.

**B. Trading Club transacted business under a common name.**

The second factor contemplated by Rule 17(d) is the transaction of business under a *common name*.[52] "Common" is defined as "occurring or appearing frequently: familiar."[53] The court thus asks whether two or more associates transacted business under a *frequently* used name. Because common does not mean exact or even consistent, the Utah Supreme Court gave no weight to Ogden Trece's (aka Centro City Locos') use of an alias when determining whether two or more associates transacted business under a frequently used name.[54] Likewise, the court here gives no weight to Trading Club's possible transaction of business under aliases.

Defendants urge a different conclusion. They draw attention to the legion of falsehoods Roger Bliss told investors, arguing Trading Club did not conduct business under a common name because Bliss used too many different names while defrauding investors.[55] While making these arguments, Defendants do not engage with Rule 17(d)'s text nor the holding in *Ogden Trece*, both of which cut against their arguments.[56] The court, however, cannot ignore those authorities.

Abiding by those authorities here, the court finds two or more associates transacted business under the frequently used name "Trading Club." When transferring money to Bliss for

---

[52] *Willowcreek Plaza*, 923 P.2d. at 1392.

[53] *Common*, MERRIAM-WEBSTER ONLINE, *available at* https://www.merriam-webster.com/dictionary/common (2018).

[54] *See Ogden Trece*, 2013 UT at ¶ 39-42, 321 P.3d at 1076-77.

[55] Dkt. 216 at 11.

[56] Defendants reliance on *Herbertson v. Willowcreek Plaza* is misplaced. 923 P.2d 1389 (Utah 1996). That case involved a plaintiff who slipped and fell in Willowcreek Plaza and then attempted to sue Willowcreek Plaza as a Rule 17(d) unincorporated association, rather than the incorporated owners of the Willowcreek Plaza. The Court stated, "We do not here articulate a test for determining when parties are transacting business under a common name. We simply hold that the name of a building owned by parties transacting business together, even if such business relates solely to that building, is not enough, *without more*, to establish that the parties were transacting business under the name of the building for purposes of rule 17(d)." *Id.* (emphasis added).

the purpose of making a profit, Devereaux testified he believed he was investing in "a trading club"[57] Consistent with this belief, Devereaux identified "A TRADING CLUB" as a source of income when paying federal income taxes. [58] When other members funded their investment accounts via personal check, they referenced "Trading Club" in their check's memorandum line.[59] Members in no fewer than 28 separate checks referenced "Trading Club."[60] In view of the foregoing evidence, the parties transacted business under a "common name."

This finding agrees with *Cornelius* and *Ogden Trece*. Just as in *Cornelius*, associates pooled resources together and transacted business under a common name.[61] Although Trading Club did not have distinguishing clothing, tattoos, or hand signs, Trading Club did document its business transactions. Extensive written evidence in this case demonstrates two or more associates transacting business under the Trading Club name. Because the Receiver has satisfied both Rule 17(d) factors, Trading Club is an unincorporated association that may sue or be sued under its common name.

## II. The Receiver may sue on behalf of defrauded creditors.

Bliss argues the Receiver "has no standing to act for a creditor."[62] This argument is imprecise. Ponzi fraudsters often fraudulently transfer an entity's wealth. Such transfer injures the entity, transforming it into a defrauded creditor that can pursue its rights and remedies under

---

[57] Dkt. 209, Ex. 7 at 18:25-19:8, 69:9-10, 69:18-19.

[58] Dkt. 209, Ex. 11. In November 2016, Devereaux amended his 2014 and 2015 tax returns to show a $73,545 return on investment from "a trading club." *Id.* Just before responding to the Receiver's written discovery requests related to standing, Devereaux again amended his tax returns, now stating the income previous reported as a return on investment was actually "additional income for construction services." *Id.*

[59] Dkt. 209, Ex. 8.

[60] *Id.*

[61] 786 F.3d at 1317.

[62] Dkt. 216 at 16.

applicable statutes.[63]  Consequently, the receiver has standing to sue on behalf of a defrauded creditor, that is also an entity in receivership, under applicable statutes. [64]

III.     **The Receiver has standing to sue under Utah's Uniform Voidable Transactions Act and/or Uniform Fraudulent Transfer Act.**

The Uniform Voidable Transactions Act (UVTA) amended the Uniform Fraudulent Transactions Act (UFTA).[65]  The UVTA only "applies when any transfer occurs after the effective date [May 9, 2017] of this act."[66]  Because transfers in this case took place before May 9, 2017, Defendants argue the Receiver cannot sue under the UVTA or UFTA.  This suggestion is wrong.  Defendants fail to articulate, and the court's independent research did not unearth, any substantive difference between the two Acts.  To avoid getting bogged down in trivial technicalities, the court will amend the Order Appointing Receiver to permit the Receiver to sue under the UVTA and/or UFTA.

## CONCLUSION

The court finds Trading Club is an unincorporated association under Rule 17(d).[67]  The court therefore GRANTS the Receiver's Motion.[68]  Consistent with this opinion, the court will amend the Order Appointing the Receiver in a separate order.

---

[63] *Cornelius*, 786 F.3d at 1316.

[64] *See* Utah Code Ann. §§ 25-6-202, 25-6-303.

[65] Utah Code Ann. § 25-6-1, et seq.

[66] Utah Code Ann. § 25-6-406(1).

[67] The court does not understand the Receiver to request additional findings regarding the existence of additional unincorporated associations, such as "Roger Bliss and Associates Club LLC."  Nor does the court understand the Receiver to request a finding that "Roger Bliss and Associates Club LLC" were aliases of "Trading Club."  Therefore, the court does not reach these issues.

[68] Dkt. 208.

SO ORDERED this 27th day of November, 2018.

                BY THE COURT:

                _____
                ROBERT J. SHELBY
                United States Chief District Judge