Tammy B. Georgelas (9972)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
tgeorgelas@parsonsbehle.com

*Receiver for Roger S. Bliss, et al.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>vs.<br><br>ROGER S. BLISS, *et al.*,<br><br>    Defendants. | **FIFTH APPLICATION FOR INTERIM COMPENSATION OF RECEIVER AND PROFESSIONALS**<br><br>Case No. 2:15-cv-00098-RJS<br><br>Judge Robert J. Shelby |

Tammy B. Georgelas, the Court-appointed receiver (the "Receiver") for Roger S. Bliss ("Mr. Bliss"), Roger Bliss and Associates Equities, LLC, Roger Bliss and Associates Club LLC, and Bliss Club LLC, respectfully submits this Fifth Application for Interim Compensation of Receiver and Professionals (the "Fifth Fee Application"), seeking an order by the Court approving fees and expenses incurred by the Receiver and her attorneys, and approving fees and expenses incurred by her accountant Lone Peak Valuation Group ("Lone Peak"), for the period of October 1, 2017 through September 30, 2018 (the "Application Period"). Pursuant to the Billing Instructions for Receivers in Civil Actions Commenced by the U.S. Securities and Exchange Commission (the "SEC Billing Instructions"), the Receiver has already submitted this

1

Fee Application to the Securities and Exchange Commission (the "SEC"), along with all supporting invoices. The SEC reviewed the same, provided comments, and indicated it had no objection to the Fee Application. In support of the Fifth Fee Application, the Receiver states as follows:

## INTRODUCTION

The Receiver and Her Attorneys

1.      On June 10, 2015, the Court entered an order appointing Tammy B. Georgelas as the Receiver for Roger S. Bliss, Roger Bliss and Associates Equities, LLC, Roger Bliss and Associates Club LLC, and Bliss Club LLC (collectively, the "Receivership Defendants"). *See* Order Appointing Receiver and Staying Litigation (the "Order Appointing Receiver"). [Dkt. No. 39].

2.      The Court found that the appointment of a receiver was necessary and appropriate in this action for the purposes of marshaling and preserving all assets of the Receivership Defendants as well as the assets of any other entities or individuals that: (a) are attributable to funds derived from investor or clients of the Defendants; (b) are held in constructive trust for the Defendants; (c) were fraudulently transferred by the Defendants; and/or (d) may otherwise be includable as assets of the estates of the Defendants (collectively, the "Recoverable Assets"). *Id.* at 1.

3.      On July 6, 2015 the Court entered an order approving of the employment of the Receiver's attorneys, which was effective as of the date of the Receiver's appointment. *See* Order Authorizing Engagement of Attorneys. [Dkt. No. 48.]

4816-3817-6866v2

4.      Prior to her appointment, the Receiver met with the SEC to discuss this matter and the scope of work anticipated.  Sensitive to the main purposes of a receivership, which are to wind down the estate and return the largest amount of funds to victims, the Receiver agreed to perform work at a discounted rate up to a total expense of $250,000.  Should she need to incur additional fees thereafter, the Receiver agreed that such work would be performed at a reduced rate of 50%, not to exceed an additional $125,000.   The Receiver agreed that any work performed beyond the $375,000 would be at no cost to the estate.  Thus, the cost to the estate for the Receiver and her counsel would be no more than $375,000.

5.      To help meet this arrangement, the Receiver agreed to reduce her rate to $270/hour and Parsons Behle & Latimer agreed to discount its customary rates as follows: (a) a blended rate for paralegals and associates of $210 per hour; and (b) hourly rates of between $240 and $380 for shareholders.

6.      Below is a table providing the Fee Schedule of the Receiver's professionals and paraprofessionals who worked on this matter during the Application Period.

| Timekeeper | Rate |
| --- | --- |
| J. Thomas Beckett | $  380.00 |
| Katherine Venti | $  380.00 |
| Matthew D. Cook | $  280.00 |
| Tammy B. Georgelas | $  270.00 |
| Andrew V. Wake | $  235.00 |
| John L. Cooper | $  230.00 |
| Matthew VanWagoner | $  225.00 |
| Grace Pusavat | $  190.00 |
| Jacqueline H. Pope | $  175.00 |
| Marguerite Chelsey | $  170.00 |
| Melinda Pfeiffer | $  125.00 |
| Chermaine Gord | $  120.00 |

3

7.     When the Receiver first met with the SEC, the information available at the time indicated that the Receivership Defendants had losses of approximately $3,300,000, owed to about 40 investors, and that Mr. Bliss would cooperate in the administration of the Receivership Estate.

8.     Since the appointment of the Receiver, and after a thorough investigation by the SEC and the Receivership Team, it is now known that losses exceed $21,000,000, affecting over 150 investors, and that Mr. Bliss was not cooperative in, and indeed actively thwarted, the administration of the estate.[1]

9.     Although the complexity and sheer size of this case changed dramatically since she accepted her position, the Receiver and her team maintained their commitment to their agreement with the SEC and the Court to cap their fees at $375,000.  That cap was reached with the Third Fee Application filed in February 2017.

10.    The SEC discussed the fee agreement with the Receiver, indicating a willingness to support a motion requesting authority from the Court to allow additional funds to pay the Receivership Team for their continued and vital work on the Receivership.

11.    The Receiver filed a Motion for Authority to Allow Additional Funds with the Court on November 27, 2017.  [Dkt. No. 194].

12.    On December 20, 2017 the Court granted the motion, approving Receiver's request to set the rate for any future recovery at 75% for attorneys' fees and 100% for costs, and entered an Order Granting Motion for Authority to Allow Additional Funds and Receiver's Fourth Application for Interim Compensation of Receiver and Professionals. [Dkt No. 200].

---

[1] As the Court is aware, Mr. Bliss was sentenced to a year in federal prison for perjury after lying to the Receiver and the Court about his assets.

4

The Receiver's Accountants

13.     In accordance with the Order Appointing Receiver, the Receiver has engaged and employed persons in her discretion to assist her in carrying out her duties and responsibilities, including but not limited to attorneys, auctioneers, appraisers, real estate agents, construction experts, and accountants (the "Receivership Team").

14.     On March 17, 2016 the Court entered an order approving of the employment of the Receiver's accountants.  *See* Order Granting Motion to Employ Accountants.  [Dkt. No. 122].

15.     As set forth in the Receiver's Motion to Employ Accountants, Lone Peak agreed to perform work in this matter at a discounted rate of 17%.  The fee schedule for Lone Peak's employees is set forth below.

| Timekeeper | Rate |
|---|---|
| Jeffrey Pickett | $ 220.00 |
| Melanie Quintana | $ 120.00 |
| Tia Donohoe | $ 120.00 |

16.     The Receiver respectfully submits this Fifth Interim Application to approve the Receivership Team's fees and costs, and to allow for payment to the same.

## PRIOR FEE APPLICATIONS

1.     On May 5, 2016 the Receiver filed the First Application for Interim Compensation of Receiver and Professionals (the "First Fee Application"), requesting fees and costs for the Receivership Team in the amount of $275,679.81 for work performed from June 1, 2015 to February 29, 2016.  [Dkt. No. 142].

5

2.      The First Fee Application did not include a request for reimbursement for Lone Peak because the SEC, not the estate, bore the cost of the first $80,000 worth of work performed by the accountant.

3.      On May 9, 2016 the Court approved the requested fees and costs. *See* Order Granting Receiver's First Application for Interim Compensation of Receiver and Professionals. [Dkt. No. 144].

4.      The Receiver paid the approved fees and costs from the Receivership Estate's bank account on May 10, 2016.

5.      Due to the sensitive nature of the work performed by the Receivership Team, the Receiver requested permission from the Court to submit their detailed invoices *in camera*. The Court granted her request, and entered the Order Granting Motion to File All Future Fee Application Invoices in camera. [Dkt. No. 174.]

6.      On October 27, 2016 the Receiver filed the Second Application for Interim Compensation of Receiver and Professionals (the "Second Fee Application"), requesting fees and costs for the Receiver's Team in the amount of $94,854.22 for work performed from March 1, 2016 to September 30, 2016. [Dkt. No. 175].

7.      On October 31, 2016 the Court approved the requested fees and costs. [Dkt. No. 177].

8.      The Receiver paid the approved fees and costs from the Receivership Estate's bank account on November 2, 2016.

4816-3817-6866v2

9.     On February 14, 2017 the Receiver filed the Third Application for Interim Compensation of Receiver and Professionals (the "Third Fee Application"), requesting fees and costs for the Receiver's Team in the amount of $70,966.72 for work performed from October 1, 2016 to December 31, 2016.  [Dkt. No. 189].

10.     On February 28, 2017 the Court approved the requested fees and costs.  [Dkt. No. 190].

11.     Because of the cap from the Receiver's fee agreement with the SEC, the Receiver paid $16,064.52 of the $70,966.72 approved fees and costs from the Receivership Estate's bank account on March 17, 2017.

12.     As such, $54,902.20 in approved fees went unpaid.

13.     On November 27, 2017 the Receiver filed the Fourth Application for Interim Compensation of Receiver and Professionals (the "Fourth Fee Application"), requesting fees and costs for the Receiver and her attorneys in the amount of $141,734.13 for work performed from January 1, 2017 to September 30, 2017, and fees and costs for her accountants in the amount of $7,232 during the same time period.  [Dkt. No. 195].[2]

14.     On December 15, 2017 the Court approved the requested fees and costs and granted her Motion for Authority to Allow Additional Funds [Dkt. No. 200], which authorized:

a)     Payment of 75% of the $54,902.20 in fees remaining from the Third Fee Application, totaling $41,177.

b)     Payment of 75% of the $139,761 in fees from the Fourth Fee Application, totaling

---

[2] The Receiver asked the Court to approve all fees and costs in the Fourth Fee Application, and allow her to pay Lone Peak upon entry of the order.  She asked that she be allowed to pay herself and her attorneys if the Court granted her Motion for Authority to Allow Additional Funds.

7

$104,820.75.

c)    Payment of 100% of the costs from the Fourth Fee Application, totaling $1,973.13.

d)    Payment of 100% of Lone Peak's fee and costs, totaling $7,232.00.

15.    To date, the Receiver and her attorneys have been paid $520,997.75 in fees and $13,571.68 in costs.

16.    The detailed invoices comply with the requirements of the SEC Billing Instructions, and as explained above the Receiver has already submitted them to the SEC, which did not object to the time spent in this matter.  Summaries of the services provided during the Application Period are provided below.

<b><u>CASE STATUS</u></b>

A.    <u>Unencumbered Funds</u>

1.    The Estate currently holds liquid assets of $222,738.27 from which all general operating and administrative expenses of the estate are paid (the "General Operating Account"). Standardized Fund Accounting Reports for the Application Period are attached as <u>Exhibit A</u>.

2.    The funds on deposit have been obtained through marshalling Defendants' bank accounts, selling personal and real property, and negotiating the return of funds from Net Winners.

3.    Because the Receiver has sold substantially all of the real and personal property of the Estate, administrative expenses such as utility bills and appraisal fees have been reduced significantly.

8

4816-3817-6866v2

4.      On October 6, 2016, the Court approved the Plan for Claims Administration, Loss Allocation, and Distribution (the "Plan") and set the Claims Bar date for November 14, 2016. [Dkt. No. 166.]

5.      As discussed below, the Receiver has made her initial distribution from the unencumbered funds to victims in accordance with the Plan.

B.      Case Administration

1.      The Court is aware of the intricacies of this case via the Receiver's status reports, notices of failure to comply with court orders, and the Court's own involvement in contempt hearings.  The Receiver's reports and notices provide detailed information outlining steps she has taken in administering the estate.  In the interest of saving time and expense to the estate, the Receiver refers back to those documents and provides below a summary of the work she has performed as required by the SEC Billing Instructions. *See* Notice of Apparent Failure of Roger S. Bliss to Comply With Court Order [Dkt. No. 57], Notice of Supplemental Notice of Apparent Failure of Roger S. Bliss to Comply with Court Order [Dkt. No 82], Preliminary Liquidation Plan and Status Report [Dkt. 90]; Quarterly Status Report [Dkt. 120], Third Quarterly Status Report [Dkt. No. 147], Fourth Quarterly Status Report [Dkt. No. 172]; Fifth Quarterly Status Report [Dkt. No. 186]; and Sixth Quarterly Status Report [Dkt. No. 191]; Seventh Quarterly Status Report [Dkt. No. 193].

C.      Assets and Disposition Thereof

1.      Soon after her appointment, the Receiver seized approximately $795,000 from Mr. Bliss's personal bank account, which he had used to run his investment scheme.  Those funds were deposited into the General Operating Account.

9

2.      The Receiver has now marshalled and sold all personal property that has been acknowledged by the Receivership Defendants and related third parties.   Sale of personal property has provided a net profit to the estate of approximately $475,000.

3.      The Receiver has also marshalled and sold all real property of the estate.   Sale of real property has provided a net profit to the estate of $1,382,315.49.

D.      Liquidated and Unliquidated Claims

1.      After carefully considering the costs and benefits of third party actions, the Receiver filed lawsuits against 43 Net Winners, including insiders, in June 2016 to return funds that could total several million dollars to the Receivership Estate.

2.      Since that time, she has resolved 28 of the lawsuits, resulting in payments to the Receivership Estate totaling $376,764.45.

3.      Twelve Net Winners have obtained legal counsel to represent them.   Litigation in the net winner lawsuits has been on hold since July 2017 pending resolution of numerous Defendants' attacks on her standing to pursue the lawsuits.   On November 27, 2018 the Court entered a Memorandum Decision and Order Granting the Receiver's Motion holding that she has standing to sue the net winners under Utah's Uniform Voidable Transactions Act and/or the Uniform Fraudulent Transfer Act.   [Dkt. No. 241.]   The Receiver will now move forward with the lawsuits, which currently seek to return $4,900,000 to the Estate.

4.      The Receiver also negotiated an agreement with the Church of Jesus Christ of Latter Day Saints to disgorge donations made by Roger Bliss totaling approximately $178,000.

4816-3817-6866v2

E.      Summary of Claims Proceedings

1.      On October 11, 2016, the Court entered the Receiver's Plan for Claims Administration, Loss Allocation, and Distribution and Set the Claims Bar Date for November 14, 2016. [Dkt. No. 170].

2.      The following week, in accordance with the Plan, the Receiver mailed official Claim Forms to approximately 140 investors for whom she has valid postal addresses. These forms contained the Receiver's opinion about the Invested Amount and the Recovered Amount for each Investor's Claim.

3.      The Receiver also provided notice to unknown claimants regarding the approval of the Plan and the Claims Bar Date in Intermountain Commercial Record and Salt Lake Times, a publication of general circulation in Salt Lake County, Utah; the Davis County Clipper, a publication of general circulation in Davis County, Utah; and The News-Examiner, a publication of general circulation in Bear Lake County, Idaho.

4.      Nearly all Claim Forms were timely returned by November 14, 2016.

5.      The vast majority of the Claim Forms submitted agreed with the accounting provided by the Receivership Team.

6.      The Receiver and her team worked diligently with the investors to resolve outstanding issues and obtain all necessary documentation.

7.      This process resulted in the Receiver sending just two Claim Determination Notices, informing the investor of a disputed claim in accordance with the Plan.

8.      On February 9, 2017 the Court granted the Receiver's Motion for Claim Resolution, denying investor Jams Percy's demand that she disgorge his $1,000,000 investment

11

made in February 2015.  [Dkt. No. 187.]  This ruling allowed the Receiver to include the $1,000,000 at issue as part of the funds she distributed in her first interim distribution to investors.

9.      The Receiver mailed the First Distribution checks to investors totaling $2,409,093.10 on February 15, 2017.  This distribution returned funds to investors such that every investor with an accepted claim received a return of at least 27.33% of his or her total investment under a Rising Tide analysis.

10.      On January 16, 2018 the Court granted the Receiver's Motion for Claim Resolution Regarding Investor Kevin Fortney, which resolved a dispute over the total amount of his investment into the scheme.  [Dkt. No. 205.]  The Court determined that Mr. Fortney's Invested Amount was $120,600, instead of "$400,000-$500,000."  This ruling will allow the Receiver to pursue $545,900 against Mr. Fortney in a net winner lawsuit, instead of $166,500.

<u>**REQUEST FOR COURT APPROVAL OF FEES AND EXPENSES**</u>

A.      <u>The Receiver and Her Attorneys</u>

The Receiver represents that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) with the exception of the Billing Instructions, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

The Receiver respectfully requests that the Court enter an order approving the fees and costs incurred by the Receiver and her attorneys on an interim basis.  The fees incurred by the Receiver and her attorneys, categorized by task, are as follows:

4816-3817-6866v2

|  | Receiver | Parsons, Behle & Latimer |  |
|---|---|---|---|
| **Task** |  |  | **Total Hours** |
|  |  |  |  |
| Asset Analysis and Recovery | 1.7 | 2.1 | 3.8 |
| Asset Disposition | 0 | 0 | 0 |
| Case Administration | 51.1 | 37.1 | 88.2 |
| Claims Administration and Objections | 2.5 | 2.5 | 5 |
| Ancillary Litigation | 235.2 | 567.1 | 802.3 |
|  |  |  |  |
| **Total Hours** | 290.5 | 608.8 | 899.3 |
| **Total Fees** | $78,435.00 | $160,529.50 | $238,964.50 |

An itemization of the work performed by individual is set forth below. This breakdown is supported by the detailed invoices already provided to the SEC and submitted directly to the Court *in camera* as Exhibit B.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Tammy B. Georgelas | 290.5 | $ 270.00 | $ 78,435.00 |
| J. Thomas Beckett | 153.9 | $ 380.00 | $ 58,482.00 |
| Katherine Venti | 96.1 | $ 280.00 | $ 36,518.00 |
| Matthew D. Cook | 19.1 | $ 280.00 | $ 5,348.00 |
| John L. Cooper | 154 | $ 230.00 | $ 34,701.00 |
| Matthew VanWagoner | 8.6 | $ 225.00 | $ 1,935.00 |
| Grace Pusavat | 1.9 | $ 190.00 | $ 361.00 |
| Andrew V. Wake | 6.2 | $ 235.00 | $ 1,457.00 |
| Jacqueline H. Pope | 8.9 | $ 175.00 | $ 1,557.50 |
| Marguerite Chelsey | 16.1 | $ 170.00 | $ 2,817.50 |
| Melinda Pfeiffer | 14.5 | $ 125.00 | $ 1,812.50 |
| Chermaine Gord | 129.5 | $ 120.00 | $ 15,540.00 |
|  |  |  |  |
| Total | 899.3 |  | $ 238,964.50 |

In addition, costs in the amount of $5,060.26 have been incurred by the Receiver and her attorneys for expenses such as filing fees, photocopies, and postage.

13

The total amount of fees and costs incurred by the Receiver and her attorneys during this Application Period is $244,024.76.  The Receiver seeks approval of fees and costs in this amount.

B.    The Receiver's Accountant—Lone Peak Valuation Group

The Receiver further respectfully requests that the Court enter an order approving the fees and costs incurred by Lone Peak in the amount of $2,842.00 on an interim basis, and authorizing payment from the Receivership Estate.  An itemization of the work performed by individual is set forth below.  This breakdown is supported by the detailed invoices already provided to the SEC and submitted directly to the Court *in camera* as Exhibit C.

| Timekeeper | Hours | Rate | Total |
|---|---|---|---|
| Jeffrey Pickett | 3.10 | $ 220.00 | $ 682.00 |
| Tia Donohoe | 5.05 | $ 120.00 | $ 606.00 |
| Melanie Quintana | 12.95 | $ 120.00 | $ 1,554.00 |
| Total | 21.1 | | $ 2,842.00 |

## CONCLUSION

The Receiver respectfully requests that the Court grant this Fifth Application for Interim Compensation of Receiver and Professionals for Services Rendered from October 1, 2017 through September 30, 2018, and that the Court enter an Order approving all fees and costs herein contained.  In accordance with the Order Granting Motion for Authority to Allow Additional Funds [Dkt No. 200], the Receiver asks that she be allowed to pay herself and her attorneys 75% of their fees ($179,223.38) and 100% of their costs ($5,060.26), for a total of $184,283.64.  She further asks that she be allowed to pay Lone Peak the entire amount owed

4816-3817-6866v2

($2,842.00) upon entry of the order.   A certification in compliance with the SEC Billing Instructions is attached as <u>Exhibit D</u>.

RESPECTFULLY SUBMITTED this 10th day of December, 2018.

PARSONS BEHLE & LATIMER

/s/ *Tammy B. Georgelas*
Tammy B. Georgelas

*Receiver for Roger S. Bliss, et al.*

4816-3817-6866v2

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December, 2018, I caused the foregoing **FIFTH APPLICATION FOR INTERIM COMPENSATION OF RECEIVER AND PROFESSIONALS** to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Tammy B. Georgelas*

4816-3817-6866v2

## Index

Exhibit A—Standardized Fund Accounting Reports

Exhibit B—Detailed Invoices for Parsons, Behle & Latimer Submitted to the Court *in camera*

Exhibit C— Detailed Invoices for Lone Peak Valuation Group Submitted to the Court *in camera*

Exhibit D—Certification