Tammy B. Georgelas (9972)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT  84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
tgeorgelas@parsonsbehle.com
*Receiver for Roger S. Bliss, et al.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>      Plaintiff,<br><br>vs.<br><br>**ROGER S. BLISS,** *et al.***,**<br><br>      Defendants. | **NINTH STATUS REPORT**<br><br>Case No. 2:15-cv-00098-RJS<br><br>District Judge: Robert J. Shelby |

Tammy B. Georgelas, the Court-appointed receiver (the "Receiver") for Roger S. Bliss,

Roger Bliss and Associates Equities, LLC, Roger Bliss and Associates Club LLC, and Bliss Club

LLC (collectively the "Receivership Defendants"), respectfully submits this Ninth Status Report

to provide an update on the work and findings to date of the Receiver and her counsel, agents,

and advisors (the "Receivership Team").

## I.      SUMMARY OF OPERATIONS

###       A.      Initial Work

This Receivership was instituted on June 10, 2015.[1]  As detailed in the Receiver's prior

---

[1] *See* Order Appointing Receiver, Dkt. No. 39.

4864-6495-4119.v3

status reports,[2] she focused a significant portion of her time during the first two years of the Receivership marshalling, managing, and selling real and personal property.   These efforts included pursing assets hidden by Roger Bliss and his brother-in-law[3] (resulting in felony convictions for both men), thwarting claims by lien creditors to seize a luxury home and a cabin in Bear Lake, Idaho, and interviewing dozens of investors, insiders, and third parties to locate and recover Estate assets.

During that time the Receivership Team also developed an efficient Claims Resolution Process, through which they accurately determined the claims of nearly all 150 investors such that judicial resolution was needed for only 2 claimants.   The Receiver prevailed on both disputes, resulting in a decrease of $1,000,000 in claims against the Estate, and an increase of over $200,000 in claims against a Net Winner.   Negotiations with investors also resulted in the reduction of approximately $2,350,000 in claims against the Estate based on agreements to aggregate amounts lost by certain investors with amounts owed by related Net Winners.

In February 2017 the Receiver was able to make her First Distribution to victims totaling $2,409,093.10, which gave every investor with an accepted claim a return of at least 27.33% of his or her total investment under a Rising Tide analysis.

While the Receiver was marshalling assets and resolving claims, she was also pursing

---

[2] *See* Preliminary Liquidation Plan and Status Report, Dkt. No. 90; Quarterly Status Report, Dkt. No. 120; Third Quarterly Status Report, Dkt. No. 147; Fourth Quarterly Status Report, Dkt. No. 172; Fifth Quarterly Status Report, Dkt. No. 186; Sixth Quarterly Status Report, Dkt. No. 191; Seventh Quarterly Status Report, Dkt. No. 193; and Eighth Status Report, Dkt. No. 252.

[3] *See* Notice of Apparent Failure of Roger S. Bliss to Comply with Court Order, Dkt. No. 57; Notice of Supplemental Notice of Apparent Failure of Roger S. Bliss to Comply with Court Order, Dkt. No 82.

4864-6495-4119.v3

Net Winners.  By the summer of 2017, resolution of some lawsuits had resulted in over $375,000 in returns to the Receivership Estate.  These represented some of the smaller claims against Net Winners, and there remained 15 lawsuits that sought to return over $4,500,000 to the Estate.

B.       Standing to Pursue Net Winner Lawsuits

In July 2017, after a year of negotiations with the Receivership Team, Net Winner Steve Devereaux filed a "Motion for Summary Judgment and/or for Dismissal" (the "Motion to Dismiss") arguing that the Receiver lacked standing to pursue the lawsuit.  Other Defendants followed suit, and litigation erupted over whether the Receiver had the authority sue Net Winners.  Because the issue of standing affects the Receiver's right to pursue every Net Winner, the Receiver entered into tolling agreements that stayed the individual lawsuits pending resolution of the dispute.

The Receiver spent the next year and a half safeguarding her right to pursue claims against Net Winners to recover their spoils and return further distributions to the victims.  After extensive litigation and hearings, the Court granted the Receiver 90 days to perform additional discovery to support her position.  Afterward, the Receiver was directed to meet with Mr. Devereaux to provide her findings.  At that point, Mr. Devereaux could choose to either renew his Motion to Dismiss or proceed with the lawsuit against him.

The Receiver utilized the discovery period to prove the legal elements showing that Roger Bliss did not act alone, that his Trading Club existed as a business, and therefore the Receiver had standing to pursue the Net Winner lawsuits.  After three months of discovery, the parties met to discuss its results.  Mr. Devereaux informed the Receiver that he would neither agree that she has standing, nor renew his Motion to Dismiss.  Instead, he would strategically file

3

an Answer that asserted lack of standing as an affirmative defense, to be determined in the future, possibly during a separate trial on the issue.

Mr. Devereaux's decision undermined ten months of litigation and discovery, reserving the issue of standing to be litigated yet again at some future date and opening the Estate to attacks by all Net Winners on the Receiver's ability to pursue any claims against them. Allowing the remaining Defendants to reserve the issue of standing for trial would skyrocket the costs of litigation, on an issue that the Receiver believed had already been determined.

This was unacceptable to the Receiver, whose duty to prosecute claims against Net Winners is founded on her obligation to return the most funds possible to the true victims of Roger Bliss's Ponzi Scheme.  She took the offensive and filed a Motion to Amend the Order Appointing Receiver (the "Motion to Amend") seeking an affirmative ruling from the Court that she does, in fact, have standing to pursue all Net Winners under Utah's Uniform Voidable Transactions Act.[4]

After Mr. Devereaux filed an opposition to the Motion to Amend, the Court directed the Receiver to send notice to all Net Winner Defendants allowing them 14 days to file their own opposition, and informing them that a hearing would take place after submission of all filings. The Court also asked counsel for the Securities and Exchange Commission ("SEC") to submit a brief on the matter.

Defendants Stanton Call, Desert Hill Ventures, David Hill, Wade Olsen, and Spring Grove Investments, LLC then filed Oppositions to the Motion to Amend.[5]  The Estate's claims

---

[4]  SEC v. Bliss, Case No. 2:15-cv-0098, Dkt. No. 208.

[5]  Dkt. No. 224.

against just these 5 Defendants totaled nearly $3,000,000.  Their attorneys appeared at the

hearing to argue against the Motion to Amend, as did counsel for Mr. Devereaux, Jeanine Bliss,

and Michelle Bliss.  Counsel for the SEC submitted a brief on the issue and presented argument

in favor of the Receiver's Motion to Amend, as did with counsel for the Receiver.

On November 27, 2018, the Court entered a Memorandum Decision and Order Granting

the Receiver's Motion to Amend.[6]  The Court ruled that the Receiver has standing to pursue all

Net Winner lawsuits because Bliss's Trading Club was an unincorporated association that

transacted business under a common name, and as such he did not act alone in his scheme.[7]

C.      Litigating Net Winner Lawsuits

Having resolved the issue of standing, the Receiver terminated the tolling agreements and

renewed her pursuit of the 15 remaining Net Winner lawsuits to return funds to the victims of

Roger Bliss's scheme.  The Receiver sent communications offering to settle their cases prior to

incurring the time and expense of discovery and further litigation, agreeing to take their financial

situation into consideration when determining a settlement amount if they agreed to produce a

detailed Financial Affidavit supported by third party documentation.  Numerous defendants

produced accurate Financial Affidavits and negotiated in good faith with the Receiver.  After

performing her own extensive due diligence to determine the true assets of these defendants, the

Receiver was able to resolve 10 of the lawsuits without further litigation.  The settlements

returned $314,900 to the Receivership Estate.

---

[6]  Dkt. No. 241.

[7]  *Id.*

4864-6495-4119.v3

The Receiver pursued litigation in the remaining 5 lawsuits against Stanton Call, Desert Hill Ventures, David Hill, Wade Olsen, and Spring Grove Investments.  After the close of fact discovery, expert discovery, and submitting Expert Reports, the Receiver filed Motions for Summary Judgment on February 28, 2020 seeking a ruling from the Court that Roger Bliss ran a Ponzi Scheme, and the defendants were liable for all amounts they received above any funds they invested into the scheme, or for work performed in furtherance of the scheme.  The defendants opposed the Receiver's motions on April 10, 2020, and the Receiver filed her Replies in Support of Motion for Summary Judgment on May 1, 2020.

While the Court was making its decision on the Receiver's Motions for Summary Judgment, the Receiver continued to engage in settlement discussions with the defendants.  On November 5, 2020, the Receiver participated in a mediation with Stanton Call before Magistrate Judge Cecilia Romero.  The parties were successful in resolving the lawsuit at mediation, and entered into a confidential settlement agreement on November 27, 2020.

On November 30, 2020, the Court entered a Joint Memorandum Decision and Order granting the Receiver's Motions for Summary Judgment against Wade Olsen and Spring Grove Investments, avoiding their fraudulent transfers and holding that the Receiver could recover the amounts they received in excess of the investments they had made.  The Court held that Mr. Olsen had received $265,172 more than he had invested in the Bliss Ponzi Scheme, and that Spring Grove had received $782,441.86 more than it invested in the scheme.  On December 18, 2020, Mr. Olsen entered into a confidential settlement agreement to repay the Receivership Estate.

4864-6495-4119.v3

Spring Grove refused to settle with the Receiver, and the Court entered an Order of Final Judgment against the company on December 16, 2020.  That order was not appealed, and the Receiver is currently in litigation to enforce the judgment against Spring Grove and is seeking to have the judgment enforced against Spring Grove's individual members.

On January 4, 2021, the Court entered a Joint Memorandum Decision and Order granting the Receiver's Motions for Summary Judgment against Desert Hill Ventures, Inc. and David Hill individually, avoiding their fraudulent transfers and holding that the Receiver could recover the amounts and benefits they received from the scheme.  The Court held that Desert Hill Ventures had received $317,000 in fraudulent transfers from the Bliss Ponzi Scheme, and that Mr. Hill had received $30,000 in payments plus the value of $113,878 paid to third-party contractors to remodel his home.

After the ruling, the Receiver attempted to resolve the lawsuits with Mr. Hill and his company.  Negotiations failed and Mr. Hill obtained new counsel to represent him and his company.  On February 16, 2021 the Court entered an Order of Final Judgment against Mr. Hill and Desert Hill Ventures.  They appealed that order on March 18, 2021.  After briefing on the issue, the Tenth Circuit Court of Appeals heard oral argument on the matter on November 15, 2021.  The parties are now awaiting a ruling on the matter.  The Receiver has also filed an alter ego complaint against David Hill, arguing that he should be held individually liable for the amount owed by Desert Hill Ventures.  That litigation is proceeding.

D.      Marshalling, Managing, and Sale of Property

    1.      Real Property

The Receiver has marshalled and sold all real property of the Estate.  Sale of real

4864-6495-4119.v3

property provided a net profit to the Estate of $1,382,315.49.

### 2. *Personal Property*

The Receiver has also marshalled and sold all personal property that has been acknowledged by the Receivership Defendants and related third parties. Sale of personal property provided a net profit to the Estate of approximately $475,000.

### 3. *Donations to the Church of Jesus Christ of Latter Day Saints*

After negotiations with the Receiver, the Church of Jesus Christ of Latter Day Saints voluntarily agreed to disgorge donations made by Roger Bliss in the amount of $177,900.

### E. Second Interim Distribution

On December 17, 2021, the Receiver mailed the Second Interim Distribution checks to investors totaling $400,000. This distribution returned funds to investors such that every investor with an accepted claim has now received a return of at least 30.84% of his or her total investment under a Rising Tide analysis.

## II. STATUS OF CLAIMS PROCEEDINGS

All claims have now been resolved in accordance with the Receiver's Plan for Claims Administration, Loss Allocation and Distribution. The Receiver was able to obtain documentation, resolve outstanding issues, and cooperatively agree upon a claim amount for nearly all of the approximately 150 investors. The collaborative process resulted in the Receiver sending just 2 Claim Determination Notices to be resolved by the Court.

On February 9, 2017 the Court granted the Receiver's Motion for Claim Resolution regarding investor James Percy, denying his request that the Estate disgorge a $1,000,000

4864-6495-4119.v3

investment he made in February 2015.[8]   This ruling allowed the Receiver to include the $1,000,000 at issue as part of the funds she distributed in her First Interim Distribution to investors.

On January 16, 2018 the Court granted the Receiver's Motion for Claim Resolution Regarding Investor Kevin Fortney, which resolved a dispute over the total amount of his investment into the scheme.[9]   The Court determined that Mr. Fortney's Invested Amount was $120,600, instead of "$400,000-$500,000."   This ruling allowed the Receiver to pursue $545,900 against Mr. Fortney in a net winner lawsuit, instead of $166,500.   Earlier this year, after extensive research to unearth Mr. Fortney's true assets, the Receiver negotiated a beneficial settlement with him.   Proceeds from that settlement, as well as those discussed above, allowed the Receiver to make her Second Interim Distribution.

## III.   DESCRIPTION OF REMAINING RECEIVERSHIP PROPERTY

### 1.   Liquid Assets

The Receiver has marshalled all known bank accounts, and has sold all known personal and real property.[10]   The Receiver has made her First and Second Interim Distributions totaling $2,443,626.50, which resulted in a return of at least 30.84% of each victim's total investment under a Rising Tide analysis.   The Receivership Estate's bank account currently holds $397,129.52 in unencumbered funds.

---

[8]  Dkt. No 170.

[9] Dkt. No. 205.

[10]  Except for *de minimus* electronics such as computers and storage devices that may remain useful during the pendency of the Receivership.

4864-6495-4119.v3

2.      Estate Claims Against Third Parties

As discussed above, the Estate has claims against the remaining Net Winners totaling approximately $1,200,000.

## IV.   CASH ON HAND, ADMINISTRATIVE EXPENSES, AND UNENCUMBERED FUNDS

The Estate currently holds liquid assets of $797,129.52 from which all general operating and administrative expenses of the estate are paid.  As explained above, the Receiver recently made the Second Interim Distribution in the total amount of $400,000.  As such, the Receiver's bank account holds $397,129.52 in unencumbered funds.  A schedule of the Receivership Estate's receipts and disbursements for October 1, 2020 through September 30, 2021 is attached as Exhibit A.

Most administrative expenses since the last status report have related to the litigation pursuing Net Winner lawsuits and enforcing judgments.  The Receiver has provided her Ninth Fee Application to the SEC, and anticipates submitting the same to the Court in the near future. Since the inception of the Receivership, the Court has approved fees of $909,561.51 for the Receiver and her attorneys, and costs of $22,123.96.  In addition, the Court has approved fees and costs of $79,365.38 for the Receiver's forensic accountants.

## V.   RELATED CASES

A.   *The State of Utah v. Roger S. Bliss*, Case No. 151907989

Roger Bliss is currently serving a sentence of 4 to 30 years in state prison (the "Criminal Enforcement Action") after pleading guilty to four counts of Securities Fraud and one count of Pattern of Unlawful Activity.  He was taken into custody on February 26, 2016.

4864-6495-4119.v3

Mr. Bliss's first parole hearing was held on September 12, 2016.  Because of his recalcitrant attitude at the hearing, the Board of Pardons and Parole (the "Parole Board") determined that he would not be allowed a subsequent parole hearing until February 2026—ten years after being taken into custody.  The Parole Board noted that prior to his rehearing, Mr. Bliss must complete "significant Cognitive Behavioral Therapy classes," cooperate with federal and state authorities regarding asset disgorgement for restitution, and make significant efforts to pay restitution.

Mr. Bliss has made a redetermination request seeking to change the date of his next parole hearing.  **A hearing on the redetermination request is scheduled to take place in April 2022.**  The assertions in Mr. Bliss' redetermination request will be examined at the rehearing and Mr. Bliss will be allowed to submit any documentation that he feels will be helpful to the Parole Board.  In addition, an updated *Institutional Progress Report* and *Level of Service/Risk, Need, Responsivity Report* (an assessment used by public safety organizations to determine an offender's risk of recidivism, as well as his or her required rehabilitation, supervision, and programming needs) is due to the Board of Pardons by March 1, 2022.

Victims are not required to attend parole hearings, but they may attend and choose to testify or submit written comments.  A victim attending a hearing will not be photographed without the consent of the victim and the approval of the hearing official.  Utah law requires that victims be notified of parole hearings, which notification normally takes place 3-4 weeks before a hearing.  Victims who want to receive notifications or update their contact information may contact the Parole Board at: https://bop.utah.gov/index.php/90-bop-about-the-board-category/85-bop-contact-article.  Victim contact information will not be released to the offender.

11

Mr. Bliss was ordered to repay restitution of $21,068,438 to the victims of his scheme.  In July 2018, Mr. Bliss filed a Motion to Adjust Restitution seeking to reduce the amount from $21,068,437.52 to $8,825,393.12, and determine that only $6,413,413.18 remained due and owing because the victims have received $2,411,979.94 from the Receivership Estate via the Receiver's First Interim Distribution.  The State of Utah filed a Response arguing that the request should be denied because Mr. Bliss stipulated to the restitution amount and never requested a hearing, and furthermore that any changes in restitution amount should be determined by the Parole Board.  Mr. Bliss filed a reply and requested a hearing on the matter, which was set for January 18, 2019.  He later withdrew his motion, and the hearing was cancelled.  However, the Parole Board has noted in its records that "Mr. Bliss" has paid $2,411,979.00 toward restitution, leaving a balance of $18,656,458.52 plus interest.

B.      *USA v. Bliss*, 2:15-cr-00484-CW-DBP-1

After serving his state prison sentence relating to the Criminal Enforcement Action, Mr. Bliss will be transferred to federal prison to serve a 12 month sentence for perjury and obstruction of justice relating to his efforts in conjunction with his brother-in-law to hide a sailboat from the Receiver.

C.      *USA v. Fortney*, 2:15-cr-00484-CW-DBP-2

Kevin Fortney, Roger Bliss's brother-in-law, was sentenced to 12 months in prison for False Declaration before a Court of the United States and False Statement to a Federal Agent relating to his efforts in conjunction with Roger Bliss to hide the sailboat from the Receiver.  Mr. Fortney has served his sentence and his probation ended on November 1, 2018.

## VI.    <u>CREDITORS</u>

Aside from victims, there are no known creditors of the estate at this time.  Because the Receiver has sold all real property, no utilities remain and all lenders have been paid in full. Recurring services have been cancelled.  No creditors filed a Claim Form, despite being provided notice directly and via advertisement in the commercial records in Salt Lake County, Davis County, and Bear Lake County.  The Claims Bar Date has passed.

## VII.   <u>RECOMMENDATION FOR CONTINUATION OF RECEIVERSHIP</u>

The Receiver is actively pursuing the final 3 net winner lawsuits.  She continuously considers the costs of pursuing the cases in light of the benefits they are likely to bring to the estate.  The Receiver believes the total amount owed by the remaining defendants is over $1,200,000, and that they have the ability to pay a significant portion of their debt.  Based on this information, the Receiver recommends that the Court allow her to proceed and maintain the Receivership until her duties have been completed.  Upon resolution of the last New Winner lawsuit, the Receiver intends to make her Final Distribution to victims and wind down the Receivership Estate.

RESPECTFULLY SUBMITTED this 19th day of December, 2020.

PARSONS BEHLE & LATIMER

*/s/ Tammy B. Georgelas*
Tammy B. Georgelas

*Receiver for Roger S. Bliss, et al.*

4864-6495-4119.v3

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of December, 2020, I caused the foregoing **NINTH STATUS REPORT** to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Tammy B. Georgelas*

4864-6495-4119.v3

# Exhibit A

*Standardized Fund Accounting Reports*

4864-6495-4119.v3

**ZIONS BANK RECEIVER ACCOUNTS FOR THE ESTATE OF ROGER S. BLISS**

**Cash Receipts and Disbursements**

**For the Period October 1, 2020 to December 31, 2020**

| | October 1, 2020 through December 31, 2020 | Receivership Cumulative |
|---|---|---|
| **Beginning Balance:** | $       102,746.63 | $                - |
| | | |
| **Cash Receipts** | | |
| Business Income | - | - |
| Cash and Securities | - | 898,934.42 |
| Interest/Dividend Income | - | - |
| Business Asset Liquidation | - | - |
| Personal Asset Liquidation | | 1,860,071.34 |
| Third-Party Litigation Income | - | - |
| Net Winner Settlements | 679,500.00 | 1,123,464.45 |
| Other Settlements | - | 177,900.00 |
| Miscellaneous - Other | - | 77.08 |
| **Total Cash Receipts** | **679,500.00** | **4,060,447.29** |
| | | |
| **Cash Disbursements** | | |
| Disbursements to Investors | - | 2,403,626.50 |
| Disbursements for Receivership Operations | | |
| *Disbursements to Receiver or Other Professionals* | 224,181.40 | 1,008,195.16 |
| *Business Asset Expenses* | | 37.55 |
| *Personal Asset Expenses* | 100.00 | 76,204.30 |
| *Investment Expenses* | | - |
| *Third-Party Litigation Expenses* | | - |
| 1.  Attorney Fees | | - |
| 2.  Litigation Expenses | | 14,418.55 |
| *Tax Administrator Fees and Bonds* | | |
| *Federal and State Tax Payments* | | |
| Disbursements for Distribution Expenses Paid by the Fund: | | |
| *Distribution Plan Development Expenses:* | | |
| 1. Fees: | | |
| Fund Administrator | | |
| Independent Distribution Consultant (IDC) | | |
| Distribution Agent | | |
| Consultants | | |
| Legal Advisors | | |
| Tax Advisors | | |
| 2. Administration Expenses: | | |
| 3. Miscellaneous | | |
| *Distribution Plan Implementation Expenses:* | | |
| 1. Fees: | | |
| Fund Administrator | | |
| IDC | | |
| Distribution Agent | | |
| Consultants | | |
| Legal Advisors | | |
| Tax Advisors | | |
| 2. Administration Expenses | | |
| 3. Investor Identification: | | |
| Notice/Publishing Approved Plan | | |
| Claimant Identification | | |
| Claims Processing | | |
| Web Site Maintenance/Call Center | | |
| 4. Fund Administrator Bond | | |
| 5. Miscellaneous | | |
| 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | | |
| Disbursements to Court/Other: | | |
| *Investment Expenses/Court Registry Investment System (CRIS) fees* | | |
| *Federal Tax Payments* | | |
| **Total Disbursements** | 224,281.40 | 3,502,482.06 |
| **Ending Cash Balance** | 557,965.23 | 557,965.23 |

| | | |
|---|---|---|
| **Ending Balance of Fund - Net Assets:** | | |
| *Bank Statement Balance* | | 569,314.23 |
| *Unposted Deposits* | | - |
| *Uncleared Funds* | | (11,349.00) |
| **Total Ending Balance of Fund - Net Assets (Check register)** | | 557,965.23 |

**ZIONS BANK RECEIVER ACCOUNTS FOR THE ESTATE OF ROGER S. BLISS**

Cash Receipts and Disbursements
For the Period January 1, 2021 to March 31, 2021

| | January 1, 2021 through March 31, 2021 | Receivership Cumulative |
|---|---|---|
| **Beginning Balance:** | $ 557,965.23 | $ - |
| | | |
| **Cash Receipts** | | |
| Business Income | - | - |
| Cash and Securities | - | 898,934.42 |
| Interest/Dividend Income | - | - |
| Business Asset Liquidation | - | - |
| Personal Asset Liquidation | | 1,860,071.34 |
| Third-Party Litigation Income | - | - |
| Net Winner Settlements | 89,000.00 | 1,212,464.45 |
| Other Settlements | 200.00 | 178,100.00 |
| Miscellaneous - Other | - | 77.08 |
| **Total Cash Receipts** | **89,200.00** | **4,149,647.29** |
| | | |
| **Cash Disbursements** | | |
| Disbursements to Investors | - | 2,403,626.50 |
| Disbursements for Receivership Operations | | |
| *Disbursements to Receiver or Other Professionals* | - | 1,008,195.16 |
| *Business Asset Expenses* | | 37.55 |
| *Personal Asset Expenses* | 30.00 | 76,234.30 |
| *Investment Expenses* | | - |
| *Third-Party Litigation Expenses* | | - |
|   1. Attorney Fees | | - |
|   2. Litigation Expenses | | 14,418.55 |
| *Tax Administrator Fees and Bonds* | | |
| *Federal and State Tax Payments* | | |
| Disbursements for Distribution Expenses Paid by the Fund: | | |
|   *Distribution Plan Development Expenses:* | | |
|   1. Fees: | | |
|     Fund Administrator | | |
|     Independent Distribution Consultant (IDC) | | |
|     Distribution Agent | | |
|     Consultants | | |
|     Legal Advisors | | |
|     Tax Advisors | | |
|   2. Administration Expenses: | | |
|   3. Miscellaneous | | |
|   *Distribution Plan Implementation Expenses:* | | |
|   1. Fees: | | |
|     Fund Administrator | | |
|     IDC | | |
|     Distribution Agent | | |
|     Consultants | | |
|     Legal Advisors | | |
|     Tax Advisors | | |
|   2. Administration Expenses | | |
|   3. Investor Identification: | | |
|     Notice/Publishing Approved Plan | | |
|     Claimant Identification | | |
|     Claims Processing | | |
|     Web Site Maintenance/Call Center | | |
|   4. Fund Administrator Bond | | |
|   5. Miscellaneous | | |
|   6. Federal Account for Investor Restitution (FAIR) Reporting | | |
|     Expenses | | |
| Disbursements to Court/Other: | | |
|   *Investment Expenses/Court Registry Investment System (CRIS) fees* | | |
|   *Federal Tax Payments* | | |
| **Total Disbursements** | 30.00 | 3,502,512.06 |
| **Ending Cash Balance** | 647,135.23 | 647,135.23 |

| | | |
|---|---|---|
| **Ending Balance of Fund - Net Assets:** | | |
| *Bank Statement Balance* | | 647,135.23 |
|   *Unposted Deposits* | | - |
|   *Uncleared Funds* | | - |
| **Total Ending Balance of Fund - Net Assets (Check register)** | | 647,135.23 |

**ZIONS BANK RECEIVER ACCOUNTS FOR THE ESTATE OF ROGER S. BLISS**

**Cash Receipts and Disbursements**
**For the Period April 1, 2021 to June 30, 2021**

| | April 1, 2021 through June 30, 2021 | Receivership Cumulative |
|---|---|---|
| **Beginning Balance:** | $   647,135.23 | $          - |
| | | |
| **Cash Receipts** | | |
| Business Income | - | - |
| Cash and Securities | - | 898,934.42 |
| Interest/Dividend Income | - | - |
| Business Asset Liquidation | - | - |
| Personal Asset Liquidation | | 1,860,071.34 |
| Third-Party Litigation Income | - | - |
| Net Winner Settlements | 154,000.00 | 1,366,464.45 |
| Other Settlements | - | 178,100.00 |
| Miscellaneous - Other | - | 77.08 |
| **Total Cash Receipts** | **154,000.00** | **4,303,647.29** |
| | | |
| **Cash Disbursements** | | |
| Disbursements to Investors | - | 2,403,626.50 |
| Disbursements for Receivership Operations | | |
| *Disbursements to Receiver or Other Professionals* | - | 1,008,195.16 |
| *Business Asset Expenses* | | 37.55 |
| *Personal Asset Expenses* | 30.00 | 76,264.30 |
| *Investment Expenses* | | - |
| *Third-Party Litigation Expenses* | | - |
| 1. Attorney Fees | | - |
| 2. Litigation Expenses | | 14,418.55 |
| *Tax Administrator Fees and Bonds* | | |
| *Federal and State Tax Payments* | | |
| Disbursements for Distribution Expenses Paid by the Fund: | | |
| Distribution Plan Development Expenses: | | |
| 1. Fees: | | |
| Fund Administrator | | |
| Independent Distribution Consultant (IDC) | | |
| Distribution Agent | | |
| Consultants | | |
| Legal Advisors | | |
| Tax Advisors | | |
| 2. Administration Expenses: | | |
| 3. Miscellaneous | | |
| Distribution Plan Implementation Expenses: | | |
| 1. Fees: | | |
| Fund Administrator | | |
| IDC | | |
| Distribution Agent | | |
| Consultants | | |
| Legal Advisors | | |
| Tax Advisors | | |
| 2. Administration Expenses | | |
| 3. Investor Identification: | | |
| Notice/Publishing Approved Plan | | |
| Claimant Identification | | |
| Claims Processing | | |
| Web Site Maintenance/Call Center | | |
| 4. Fund Administrator Bond | | |
| 5. Miscellaneous | | |
| 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | | |
| Disbursements to Court/Other: | | |
| *Investment Expenses/Court Registry Investment System (CRIS) fees* | | |
| *Federal Tax Payments* | | |
| **Total Disbursements** | 30.00 | 3,502,542.06 |
| **Ending Cash Balance** | 801,105.23 | 801,105.23 |

| | | |
|---|---|---|
| **Ending Balance of Fund - Net Assets:** | | |
| *Bank Statement Balance* | | 801,105.23 |
| *Unposted Deposits* | | - |
| *Uncleared Funds* | | - |
| **Total Ending Balance of Fund - Net Assets (Check register)** | | 801,105.23 |

**ZIONS BANK RECEIVER ACCOUNTS FOR THE ESTATE OF ROGER S. BLISS**

**Cash Receipts and Disbursements**

**For the Period July 1, 2021 to September 30, 2021**

| | July 1, 2021 through September 30, 2021 | Receivership Cumulative |
|---|---:|---:|
| **Beginning Balance:** | $ 801,105.23 | $ - |
| | | |
| **Cash Receipts** | | |
| Business Income | - | - |
| Cash and Securities | - | 898,934.42 |
| Interest/Dividend Income | - | - |
| Business Asset Liquidation | - | - |
| Personal Asset Liquidation | | 1,860,071.34 |
| Third-Party Litigation Income | - | - |
| Net Winner Settlements | - | 1,366,464.45 |
| Other Settlements | - | 178,100.00 |
| Miscellaneous - Other | - | 77.08 |
| **Total Cash Receipts** | **-** | **4,303,647.29** |
| | | |
| **Cash Disbursements** | | |
| Disbursements to Investors | 3,948.71 | 2,407,575.21 |
| Disbursements for Receivership Operations | | |
| *Disbursements to Receiver or Other Professionals* | - | 1,008,195.16 |
| *Business Asset Expenses* | | 37.55 |
| *Personal Asset Expenses* | 27.00 | 76,291.30 |
| *Investment Expenses* | | - |
| *Third-Party Litigation Expenses* | | - |
| 1.  Attorney Fees | | - |
| 2.  Litigation Expenses | | 14,418.55 |
| *Tax Administrator Fees and Bonds* | | |
| *Federal and State Tax Payments* | | |
| Disbursements for Distribution Expenses Paid by the Fund: | | |
| *Distribution Plan Development Expenses:* | | |
| 1. Fees: | | |
| Fund Administrator | | |
| Independent Distribution Consultant (IDC) | | |
| Distribution Agent | | |
| Consultants | | |
| Legal Advisors | | |
| Tax Advisors | | |
| 2. Administration Expenses: | | |
| 3. Miscellaneous | | |
| *Distribution Plan Implementation Expenses:* | | |
| 1. Fees: | | |
| Fund Administrator | | |
| IDC | | |
| Distribution Agent | | |
| Consultants | | |
| Legal Advisors | | |
| Tax Advisors | | |
| 2. Administration Expenses | | |
| 3. Investor Identification: | | |
| Notice/Publishing Approved Plan | | |
| Claimant Identification | | |
| Claims Processing | | |
| Web Site Maintenance/Call Center | | |
| 4. Fund Administrator Bond | | |
| 5. Miscellaneous | | |
| 6. Federal Account for Investor Restitution (FAIR) Reporting Expenses | | |
| Disbursements to Court/Other: | | |
| *Investment Expenses/Court Registry Investment System (CRIS) fees* | | |
| *Federal Tax Payments* | | |
| **Total Disbursements** | 3,975.71 | 3,506,517.77 |
| **Ending Cash Balance** | 797,129.52 | 797,129.52 |

| | | |
|---|---|---:|
| **Ending Balance of Fund - Net Assets:** | | |
| *Bank Statement Balance* | | 797,129.52 |
| *Unposted Deposits* | | - |
| *Uncleared Funds* | | - |
| **Total Ending Balance of Fund - Net Assets (Check register)** | | 797,129.52 |